**Robert J. WASHINGTON, Individually and as former Acting Principal of the Washington School, District 89, et al., Plaintiffs-Appellants,**

v.

**BOARD OF EDUCATION, SCHOOL DISTRICT 89, COUNTY OF COOK, STATE OF ILLINOIS, a body politic and corporate, et al., Defendants-Appellees.**

No. 73-1338.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1973.

Decided May 20, 1974.

**12**

Patrick Keenan, Chicago, Ill., William A. London, Cook County Legal Assistance Foundation, Brookfield, Ill., for plaintiffs-appellants.

Lawrence A. Passarella, Melrose Park, Ill., for defendants-appellees.

Before CUMMINGS, PELL, and STEVENS, Circuit Judges.

PELL, Circuit Judge.

In June 1972, Robert Washington, acting principal of Washington School, a public elementary institution in Maywood, Illinois, was told by the district superintendent that he would be reassigned in the fall as a classroom teacher in a different school. Two weeks later, the Board of Education ratified the demotion and transfer, which entailed a substantially lower salary than Washington had been receiving. Subsequently, Washington, the Parent Teachers Organization of Washington School (P.T.O.), and a member of that organization filed a civil rights complaint alleging that the officials had acted in retaliation for plaintiffs' exercise of rights guaranteed by the First and Fourteenth Amendments.[1]

The district court held that the plaintiffs other than acting principal Washington had no standing under 42 U.S.C. § 1983 to complain of the wrongs allegedly committed. The court therefore dismissed the action as to those plaintiffs. Relying in part on Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968), and several teacher nonretention decisions from this circuit, the court further concluded that plaintiff Washington had failed to state a claim upon which relief could be granted.

I

The complaint (and accompanying exhibits) reflect the following.

In October 1971, defendant district superintendent Peterson appointed Robert Washington acting principal of Washington School when the then principal, who later resigned, was suspended. Peterson "by statute and delegation [was] charged with supervising the day to day operation of the schools . . . [and was] empowered to hire, suspend, remove and transfer employees of District 89 subject to ratification by Defendant Board." In a confirmatory letter dated November 19, 1971, the superintendent stated that Washington would be acting principal until either the Board of Education approved a new principal or Peterson terminated the appointment. Plaintiff was to receive two weeks' notice.

The following month, when superintendent Peterson requested the Washington faculty and the P.T.O. to recommend a permanent principal, both groups named Robert Washington. On several occasions thereafter, Peterson

---

1. The complaint sought (1) a declaration that the defendants had abridged the plaintiffs' right to freedom of speech; (2) an injunction reinstating plaintiff Washington to a position at Washington School comparable to that which he had held prior to his demotion; and (3) $10,000 as compensatory and punitive damages.

In oral argument, plaintiffs' counsel stressed the vindication of Washington's rights at a judicial hearing and the recoupment of damages. Plaintiff Washington apparently no longer seeks reinstatement at Washington School. (According to the complaint, defendant School Board in July 1972 appointed someone to the vacant permanent principalship.)

indicated that the recommendations would be followed.

On January 25, 1972, the Executive Board of the P.T.O. determined the agenda for its February 8th meeting. The principal or acting principal of Washington School is an ex officio member of the P.T.O. Board. The agenda adopted included discussion of the following issues: (a) the $6 book fee assessed annually against each child in the school district; (b) the Board's rejection of a preliminary proposal for $217,000 in federal funds; (c) the Board's failure to fill the principalship vacancy at Washington School; and (d) the Board's failure to assign a full-time nurse at the school.

On January 27th, the defendants issued a news release announcing that plaintiff Washington had been named principal of Washington School. A few days later, defendants submitted to plaintiff for his signature a contract for the 1971–72 academic year designating him "Acting Principal."

Several days before the scheduled February P.T.O. meeting, P.T.O. members were sent a bulletin, sent over the name of the P.T.O. president, containing the agenda for the coming meeting. On the bulletin were the words "Approved: R. J. Washington, Acting Principal."

During this period, Washington was interviewed by a local reporter about "what student needs have to be met to provide quality education." The acting principal's remarks, some of which touched topics on the P.T.O. agenda, were quoted at length in a February 9, 1972, article in the Maywood Herald. At least three other District 89 principals were quoted in the local press in February on educational-financial problems.

Plaintiff maintains that "[t]hese two instances of the exercise of free expression . . . —the approval of (or perhaps failure to censor) the P.T.O. agenda, and the Maywood Herald article of February 9—cost him his job as principal." He points to a two-page memorandum listing "Reasons for decision to reassign," which he was given in June 1972 by superintendent Peterson. The bulk of the memorandum was devoted to what it denominated "your two major actions against the Superintendent and the Board of Education . . .," namely, the P.T.O. bulletin and the article in the Maywood Herald.[2]

The defendants emphasize the remainder of the memorandum, which listed eight additional criticisms and which by necessary inference might be deemed minor actions. Three concerned the manner in which Washington returned the contract defendants had tendered to him; the others cited instances when plaintiff allegedly had failed to follow

---

2. The memorandum provided in part:

"1. *Bulletin to Parents 2/3/72*

The bulletin approved by you insinuated that something unsavory was happening in District 89 which was attributable to the Board of Education.

The bulletin seems to be scolding the Board of Education for refusing $200,000 in Federal Funds when in fact no funds had ever been scheduled for District 89. The bulletin suggests that the $6 book rental fee might be going astray when in fact you could have explained how the $6 was being used.

. . . . .

The bulletin contained many untruths and inaccuracies. It should never have been allowed to go home to parents because it berates the Superintendent and the Board of Education in a way that cannot be justified.

"2. *Article in the Maywood Herald dated 2/10/72*

This article was very critical of the Superintendent and the Board of Education. The article was written in such a way that the intent seems to be clear that the Superintendent and the Board have deliberately acted in a way which has hurt the boys and girls at Washington School. Such action on your part cannot be construed as constructive criticism because your first responsibility is to exhaust all efforts through regular administrative channels and this was not done. It was quite apparent to many people that the intent was to castigate the Superintendent and the Board of Education for what must have been political motives."

acceptable procedures. "The following items added to your two major actions . . . only add to the evidence that has accumulated to verify your inability to perform as required in District 89." Washington characterizes this further "evidence" as drummed-up charges.

The defendants in this appeal also cite other factual matters claimed to support the result reached by the district court but which are not evident from the complaint and which matters we have not considered as we are only concerned with the correctness of dismissing the complaint because of failure of the complaint to state a claim upon which relief may be granted.

## II

 Under Rule 12(b), Fed.R.Civ. P., a complaint should be dismissed for failure to state a sufficient claim only if the plaintiff would be entitled to no relief under any state of facts he could prove in support of his claim. The briefs clearly show that the parties disagree as to the "real reasons" defendants reassigned plaintiff. We must, of course, accept the allegations of the complaint as true. Therefore, the primary issue is whether the reassignment and demotion of Washington because he gave an interview to a reporter and permitted the dissemination of the P.T.O. bulletin infringed Washington's rights under the First and Fourteenth Amendments.[3] If the case law establishes that a school administrator has no right to take these actions, then the district court properly dismissed Washington's complaint. Our reading of the applicable decisions, however, discloses no such absolute rule.

In Hostrop v. Board of Junior College Dist. No. 515, 471 F.2d 488 (7th Cir. 1972), cert. denied, 411 U.S. 967, 93 S.

Ct. 2150, 36 L.Ed.2d 688 (1973), decided a week after the district court ruled in the present case, we reversed the dismissal of a complaint by the president of a state junior college. Hostrop had alleged that he had been removed from his position because of certain statements he had made. The "basic question" on appeal was "whether the rights of free expression and procedural due process traditionally given to teachers and other public employees extend also to a college president who was hired to act as the direct agent of a school board." 471 F.2d at 489. The district court in Hostrop, like the district court here, had reasoned from a remark in Pickering, supra, that First Amendment rights of persons in personal and intimate working relationships with their superiors may be restricted.

Judge Castle, speaking for the court, stated:

> "Pickering holds that an employee's speech may be regulated only if a public entity can show that its functions are being substantially impeded by the employee's statements . . . . Absent actual proof of such an impairment, the face of the pleadings shows no reasons to deny Dr. Hostrop's first amendment rights. It was therefore error to dismiss his complaint for failure to state a cause of action on first amendment grounds." 471 F.2d at 492–493 (footnotes omitted).

Hostrop also pointed out the difficulties of deciding on a motion to dismiss what rights a particular administrator has. 471 F.2d at 491.

Hostrop plainly governs the case before us. The face of Washington's complaint reveals no deterioration of the relationship between Washington and his superiors so as to require the conclusion

---

3. The Supreme Court has laid to rest the notion that a public school employee's lack of a contractual or tenure right to reemployment defeats the claim that the adverse action of which he complains violated his rights under the First and Fourteenth Amendments. Perry v. Sindermann, 408 U. S. 593, 597–599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiff Washington, who was not promised the post of principal or acting principal beyond the 1971–72 academic year, does not maintain that he was denied procedural due process; rather, he asserts that he was reassigned for constitutionally impermissible reasons.

that plaintiff's expressive acts "substantially impeded" the public entity's functions. Indeed, according to the complaint, Washington continued to perform as an acting principal for four months after his two "major acts," that is, until June 1972, when defendant Peterson informed him that he would be reassigned and demoted. Paragraph 30 states in part: "On June 26, 1972 after the close of the 1971–72 school year, Plaintiff R. J. Washington met with Defendant Peterson to discuss his various requisitions for goods and services in connection with the forthcoming 1972–73 school year."

Also, as in *Hostrop*, the record does not reveal the nature and details of the complainant's relationship with his superiors. For example, we do not know whether the defendants had created properly drawn grievance procedures which plaintiff was supposed to have exhausted prior to making public statements about the problems confronting his school. Nor do we know from the complaint whether the defendants had promulgated a rule against the giving of press interviews such as Washington gave. If there was such a rule and if Washington's failure to adhere to it was the basis for defendants' disapproval of the interview, then the scope and constitutional validity of the rule would have to be examined. The record also fails to disclose whether defendants and plaintiff were authorized to censor P.T.O. material or whether the Board had directed the head of Washington School to withhold what plaintiff terms a pro forma approval of P.T.O. material if the principal considered P.T.O. statements to be inaccurate.

In sum, the dismissal of the complaint precluded fact-finding as to (1) the "real reasons" defendants reassigned acting principal Washington; (2) the nature of the relationship between Washington and his superiors; (3) the "health" of that relationship; and (4) the deleterious effects, if any, of Washington's acts on the performance of his daily duties and on the regular operation of Washington School. *Pickering* and *Hostrop* suggests questions that are relevant to the analysis of points (2) through (4).

### III

Also presented on this appeal was a procedural point involving the application of Rule 60(b), Fed.R.Civ.P.

The decision and order of dismissal were entered by the district court on December 14, 1972. The opinion of this court in *Hostrop, supra*, was filed on December 21, 1972, reversing the district court judgment in that case on which the district court in the present case had in part relied. The plaintiffs filed notice of appeal on January 12, 1973. On the same day, they filed in the district court their motion for relief from the decision and order entered December 14, 1972. The latter motion was filed pursuant to Rule 60(b) and was based upon the decision of this court in *Hostrop*, which was claimed to be dispositive of the present case and which we have determined on this appeal to be a correct evaluation.

On the assumption that the district court in the light of *Hostrop* might have reached a different conclusion as to the propriety of dismissing the action, it is to be regretted that considerable time and expense, both of the litigants and the judiciary, became involved in this appeal. The district court on the authority of Swam v. United States, 327 F.2d 431, 433 (7th Cir. 1964), cert. denied, 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed. 2d 55, and upon the basis that the trial court's jurisdiction had been divested by the filing of the notice of appeal "dismissed" the 60(b) motion.

Because of the disposition we have given to this appeal it is unnecessary to decide whether the district court properly ruled on the motion. Indeed, it would appear that the denial of the motion, which itself would have been the basis of an appeal, is not properly before this court as no notice of appeal was directed to the denial.

However, because it is not infrequent that an appellate court does hand down a decision shortly after a trial court judgment, which decision would arguably cause a different judgment to be reached by the trial court, we address ourselves in our supervisory capacity to the particular aspect of Rule 60(b) here involved.

Of course, if time permits, an appellant may have an opportunity to present his 60(b) motion before filing his notice of appeal and may thus secure the relief sought before the expiration of time for the filing of the notice of appeal. In the present case, the time had almost expired and apparently out of an abundance of caution counsel did not pursue the possibility of a 30-day extension under Rule 4(a), Fed.R.App.P.

■ In the situation where the notice of appeal has been filed before the filing of the appellate court opinion which would indicate a result contrary to that reached in the trial court, there are alternative procedures available to the district court which may save an unnecessary appeal.

The historical background and alternative procedures which have developed are set forth in 11 Wright & Miller, Federal Practice and Procedure: Civil § 2873, at 263–65 (1973):

"The earlier cases on Rule 60(b) took the view that the district court has no power to consider a motion under that rule after a notice of appeal has been filed. This always has seemed anomalous since the time for making the motion continues to run while the case is pending on appeal. Those cases required a party seeking relief from a judgment during the pendency of an appeal first to present his grounds for relief to the appellate court. If it thought that the motion should be heard it would remand the case to the district court for that purpose. An alternative to actual remand was for the appellate court to give permission to the district court to rule on the motion.

"Other cases have developed a different and more satisfactory procedure. They hold that during the pendency of an appeal the district court may consider a Rule 60(b) motion and if it indicates that it is inclined to grant it, application then can be made to the appellate court for a remand. This procedure is sound in theory and preferable in practice." (Footnotes omitted.)

In the narrow situation here involved of a supervening and probably controlling authority, district courts in this circuit should avail themselves of the last mentioned procedure.

Accordingly, we reverse the dismissal of Washington's complaint, and we remand the cause to the district court for further proceedings. We affirm the judgment as to the other plaintiffs.

Reversed and remanded.