**Dwight L. INGRAHAM,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**Jocelyn BONDS, etc., et al.,**
**Plaintiffs-Appellees,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**Nos. 83–1154, 83–1160.**

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1987.

Helen M. Eversberg, U.S. Atty., Harold O. Atkinson, Asst. U.S. Atty., San Antonio, Tex., Sandra Wien Simon, Robert S. Green-

span, Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellant in No. 83–1154.

Russell H. McMains, Corpus Christi, Tex., Guy H. Allison, Richard S. Johnson, San Antonio, Tex., for plaintiff-appellee in No. 83–1154.

Donald P. Wilcox, Austin, Tex., for amicus curiae Texas Med. Ass'n.

Bruce G. Forrest, Atty., Civil Div., U.S. Dept. Of Justice, Washington, D.C., for defendant-appellant in No. 83–1160.

Susan German, Asst. Atty. Gen., Austin, Tex., for amicus curiae State of Tex.

Lawrence J. Madigan, Moriarty & Madigan, Houston, Tex., Harry Adams, Universal City, Tex., for plaintiffs-appellees in No. 83–1160.

Aubrey Flowers, San Antonio, Tex., Guardian Ad Litem for minor plaintiff.

Before CLARK, Chief Judge, RUBIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

The appellees in these consolidated cases sued the United States, under the Federal Tort Claims Act, for severe injuries caused by the negligence of government physicians. In each case, after entry of adverse judgment the government moved for relief from the judgment to the extent that the damages exceeded the limit imposed on medical malpractice awards by the Medical Liability and Insurance Improvement Act of Texas, Tex.Rev.Civ.Stat.Ann. art. 4590i. The respective district courts denied these posttrial motions. Concluding that the government did not raise the issue timely before the trial courts, that the issues were not preserved for appeal, and, in the Bonds case, that the challenged awards were not otherwise excessive, we affirm both judgments.

*Background*

In 1977, in response to what was perceived to be a medical malpractice crisis, the Legislature of Texas, like several other state legislatures, adopted certain limitations on damages to be awarded in actions against health care providers, for injuries caused by negligence in the rendering of medical care and treatment. Of particular significance to these appeals is the $500,-000 cap placed on the *ex delicto* recovery,[1] not applicable to past and future medical expenses.[2]

On February 12, 1979, Dwight L. Ingraham was operated on by an Air Force surgeon. During the back surgery a drill was negligently used and Ingraham's spinal cord was damaged, causing severe and permanent injuries. The court awarded Ingraham judgment for $1,264,000. This total included $364,000 for lost wages and $900,000 for pain, suffering, and disability. There is no reference to the Medical Liability and Insurance Improvement Act of Texas in the pleadings, nor was any reference made to the Act during the trial. After entry of judgment the United States filed a notice of appeal. Thereafter, urging the Act's limitations, the government sought relief from judgment under Fed.R.Civ.P. 60(b). The district court denied that motion. No appeal was taken from that ruling.

Similarly, in March of 1979, Jocelyn and David Bonds, and their infant daughter Stephanie, were victims of the negligent performance by an Air Force physician. Because of the mismanagement of the 43rd week of Jocelyn Bonds's first pregnancy,

---

1. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 11.02(a), provides:

    In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000.

2. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 11.02(b), provides:

    Subsection (a) of this section does not apply to the amount of damages awarded on a health care liability claim for the expenses of necessary medical, hospital, and custodial care received before judgment or required in the future for treatment of the injury.

and the negligent failure to perform timely a caesarian section delivery, Stephanie suffered asphyxiation *in utero*. The loss of oxygen caused extensive brain damage, resulting in spastic quadriparesis, cortical blindness, seizures, and mental retardation. In their FTCA action the court awarded Stephanie $1,814,959.70 for medical expenses and $1,675,595.90 for the other losses. Jocelyn Bonds was awarded $750,000 for her losses, including loss of the society of her daughter. As in the Ingraham case, the government did not invoke the Texas malpractice limitation in pleading or at trial. Postjudgment the government filed a motion to amend the judgment under Fed. R.Civ.P. 59, but, again, there was no mention of the limitations Act. Subsequently, three months after entry of the judgment, the government filed a pleading entitled "Motion for Reconsideration," in which it advanced the malpractice Act. That motion was denied. The government appealed the judgment and motion to amend, but did not appeal the denial of the "motion for reconsideration."

These appeals do not challenge the courts' findings of liability, but object only to quantum, contending that damages are limited by the Medical Liability and Insurance Improvement Act and, in the case of Stephanie and Jocelyn Bonds, are otherwise excessive.

### Analysis

■ Appellees maintain that we should not consider the statutory limitation of liability invoked on appeal because it is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure,[3] and the failure to raise it timely constitutes a waiver. We find this argument persuasive.

Rule 8(c) first lists 19 specific affirmative defenses, and concludes with the residuary clause "any other matter constituting an avoidance or affirmative defense." In the years since adoption of the rule, the residu-

ary clause has provided the authority for a substantial number of additional defenses which must be timely and affirmatively pleaded. These include: exclusions from a policy of liability insurance; breach of warranty; concealment of an alleged prior undissolved marriage; voidable preference in bankruptcy; noncooperation of an insured; statutory limitation on liability; the claim that a written contract was incomplete; judgment against a defendant's joint tortfeasor; circuity of action; discharge of a contract obligation through novation or extension; recission or mutual abandonment of a contract; failure to mitigate damages; adhesion contract; statutory exemption; failure to exhaust state remedies; immunity from suit; good faith belief in lawfulness of action; the claim that a lender's sale of collateral was not commercially reasonable; a settlement agreement or release barring an action; and custom of trade or business. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1271 (1969 & supp.), and 27 Fed.Proc., L.Ed. § 62.63 (1984 & supp.), for discussion and citations.

Determining whether a given defense is "affirmative" within the ambit of Rule 8(c) is not without some difficulty. We find the salient comments of Judge Charles E. Clark, Dean of the Yale Law School, later Chief Judge of the United States Second Circuit Court of Appeals, and the principal author of the Federal Rules, to be instructive:

> [J]ust as certain disfavored allegations made by the plaintiff ... must be set forth with the greatest particularity, so like disfavored defenses must be particularly alleged by the defendant. These may include such matters as fraud, statute of frauds ..., statute of limitations, truth in slander and libel ... and so on. In other cases the mere question of convenience may seem prominent, as in the

---

**3.** Rule 8(c) requires that "... a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense."

case of payment, where the defendant can more easily show the affirmative payment at a certain time than the plaintiff can the negative of nonpayment over a period of time. Again it may be an issue which may be generally used for dilatory tactics, such as the question of the plaintiff's right to sue ... a vital question, but one usually raised by the defendant on technical grounds. These have been thought of as issues "likely to take the opposite party by surprise," which perhaps conveys the general idea of fairness or the lack thereof, though there is little real surprise where the case is well prepared in advance.

Clark, *Code Pleading*, 2d ed. 1947, § 96 at 609–10, *quoted in* 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1271, p. 313 (1969).

Also pertinent to the analysis is the logical relationship between the defense and the cause of action asserted by the plaintiff. This inquiry requires a determination (1) whether the matter at issue fairly may be said to constitute a necessary or extrinsic element in the plaintiff's cause of action; (2) which party, if either, has better access to relevant evidence; and (3) policy considerations: should the matter be indulged or disfavored? *See* 27 Fed.Proc., L.Ed. § 62.63.

Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise. A defendant should not be permitted to "lie behind a log" and ambush a plaintiff with an unexpected defense. *Bettes v. Stonewall Insurance Co.*, 480 F.2d 92 (5th Cir.1973); *see also Bull's Corner Restaurant, Inc. v. Director, Federal Emergency Management Agency*, 759 F.2d 500 (5th Cir.1985). The instant cases illustrate this consideration. Plaintiffs submit that, had they known the statute would be applied, they would have made greater efforts to prove medical damages which were not subject to the statutory limit. In addition, plaintiffs maintain that they would have had an opportunity and the incentive to introduce evidence to support their constitutional attacks on the statute.

This distinction separates the present cases from our recent decision in *Lucas v. United States*, 807 F.2d 414 (5th Cir.1986). In *Lucas*, although the limitation of recovery issue was not pleaded, it was raised at trial. We held that the trial court was within its discretion to permit the defendant to effectively amend its pleadings and advance the defense. The treatment we accorded this issue in *Lucas* is consistent with long-standing precedent of this and other circuits that " 'where [an affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply with Rule 8(c) is not fatal.' " *Bull's Corner Restaurant v. Director, Federal Emergency Management Agency*, 759 F.2d 500, 502 (5th Cir.1985), *quoting Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir.1983); *see also Dickinson v. Auto Center Mfg. Co.*, 733 F.2d 1092 (5th Cir.1983).

We view the limitation on damages as an "avoidance" within the intendment of the residuary clause of 8(c). Black's Law Dictionary, 5th ed. 1979, defines an avoidance in pleadings as "the allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect." Applied to the present discussion, a plaintiff pleads the traditional tort theory of malpractice and seeks full damages. The defendant responds that assuming recovery is in order under the ordinary tort principles, because of the new statutory limitation, the traditional precedents "should not have their ordinary legal effect."

Considering these factors, against the backdrop and with the illumination provided by other applications of Rule 8(c), we conclude that the Texas statutory limit on medical malpractice damages is an affirmative defense which must be pleaded timely and that in the cases at bar the defense has been waived.

Our decision today is consistent with the conclusions reached by the courts in two similar cases our research has disclosed. *Wun-Yi Tsai v. Wells*, 725 S.W.2d 271 (Tex. App.1986);[4] *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810 (1st Cir.1975) (holding that a state statutory limitation on tort damages was an affirmative defense which was waived because not timely pleaded).

### Postjudgment Motions

Having failed to raise the issue timely at trial, the government sought to invoke the benefits of the Texas statute in motions seeking relief from judgment under Fed.R. Civ.P. 60(b).[5] In neither case, however, was the denial of that postjudgment motion appealed. In Ingraham the government appealed the adverse judgment prior to filing the Rule 60 motion. In Bonds, the government appealed only the adverse judgment and ruling on its motion to amend, ignoring the ruling on its "motion to reconsider" which the judge had rejected only a few days before.

### Bonds Case

■ We subscribe to the view that the requirements of Rule 3 of the Federal Rules of Appellate Procedure [6] should not be construed so as to unduly close the appellate doors. Notices of appeal are entitled to liberal construction. *Scherer v. Kelley*, 584 F.2d 170 (7th Cir.1978). We have held that the notice element of Rule 3 may be satisfied by any statement, made either to the district court or court of appeals, which serves to notify both the dis-

trict court and opposing parties of the intent to appeal. *Van Wyk El Paso Investment, Inc. v. Dollar Rent-a-Car, Inc.*, 719 F.2d 806 (5th Cir.1983); *Cobb v. Lewis*, 488 F.2d 41 (5th Cir.1974). "The requirement of F.R.App.P. 3(c) that a notice of appeal designate the judgment from which it is taken is not to be so strictly construed as to defeat an appeal where appellant's overriding intent to appeal is clear." *Incas and Monterey Printing v. M/V Sang Jin*, 747 F.2d 958, 963 n. 15 (5th Cir.1984). "If an appellant, however, chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985).

In Bonds, the government, with full knowledge that its motion raising the statutory limitation had been denied, appealed only the judgment on the merits and the denial of the motion to amend, neither of which raised the limitations issue. Accordingly, the issue raised only in the "motion for reconsideration" is not before this court.

### Ingraham Case

■ The situation differs in Ingraham. There, the issue was first raised in a 60(b) motion filed after the appeal was taken. We are mindful that Rule 60(b) is " 'a grand reservoir of equitable power to do justice in a particular case.' " *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981) (quoting *Menier v. United States*, 405 F.2d 245, 248 (5th Cir.1968). As such, a Rule 60(b) motion may be entertained in the district court at any time within a year

---

4. Presently pending application for rehearing. We are cognizant that the definition of affirmative defense is a matter of federal law, but we may consult state cases for guidance. *Seal v. Industrial Electric, Inc.*, 362 F.2d 788 (5th Cir. 1966).

5. The pleading in the Bonds case was styled "Motion for Reconsideration," a motion not recognized by the Federal Rules of Civil Procedure. Appellees ask that we treat the motion as an untimely application for new trial under Rule 59. To the contrary, since the Rule 59 time period had elapsed, the motion for reconsidera-

tion may only be treated as a Rule 60 motion for relief from judgment.

6. Fed.R.App.P. 3 provides in pertinent part:

(c) **Content of the Notice of Appeal.** The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. An appeal shall not be dismissed for informality of form or title of the notice of appeal.

of judgment, regardless of the pendency, or even the completion of an appeal.[7] *Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976); *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir.1976) (remanding 60(b) motion dismissed by district court as untimely solely because appeal was pending). Because the 60(b) motion may be separately considered pending appeal, a denial of such a motion while the appeal of the judgment is pending, is itself separately appealable. *See Commonwealth of Puerto Rico v. SS ZOE COLOCOTRONI*, 601 F.2d 39 (1st Cir.1979); *Washington v. Board of Education*, 498 F.2d 11 (7th Cir.1974). In a case, such as the Ingraham case, where the 60(b) motion is filed after the appeal is noticed, an appeal from the ruling on that motion must be separately taken if the issue raised in that motion is to be preserved for appeal. That was not done.

### Damages in Bonds Case

■ The government's appeal raises the issue of the excessiveness of two elements of the damages in the Bonds case. While the components and measure of damages in a FTCA case is taken from the law of the state where the tort occurred, *Wakefield v. United States*, 765 F.2d 55 (5th Cir.1985), an award of damages is a factual finding, protected by Rule 52(a). That finding may be rejected on appeal only if shown to be clearly erroneous.

■ The government first contends that the damages awarded for future care of Stephanie Bonds were excessive. At trial, Bonds contended that Stephanie would need permanent residential care. The government urged the award of damages for the less expensive alternative of institutional care. The court made comments during the trial which indicated that its award would be based on institutional care. In its findings of fact, however, the court found due, and awarded, damages based on residential care. The government argues

that the court's failure to rule as indicated in comments from the bench warrants reversal. We are not persuaded. The award is amply supported by the record.

No court is irretrievably bound by comments made in open court. The court is not irretrievably bound even by a judgment or opinion. At the trial level, there are motions to modify and amend and motions for new trial. At the appellate level, there are petitions for rehearing. The ruling of consequence of the trial court is the judgment. Contrary statements made at an earlier, or later, date do not form the basis of the appeal. It is the judgment, the court's ultimate work-product, that we examine for rectitude. As our colleagues in the Ninth Circuit aptly observed a quarter century ago:

> We think we should note herein that counsel for Appellant relies too heavily on appeal on the oral comments of the Trial Court in announcing its decision. Such comment is superseded by the Findings of Fact. The Trial Judge is not to be lashed to the mast on his off-hand remarks in announcing decision prior to the presumably more carefully considered deliberate Findings of Fact.

*Rawson v. Calmar Steamship Corp.*, 304 F.2d 202, 206 (9th Cir.1962).

■ The government further contends that the award of $750,000 to Jocelyn Bonds is excessive. Although not dispositive, we seek guidance from the forum state. In a very recent case a Texas appellate court thoroughly reviewed their jurisprudence and the background of the relatively new allowance of damages to parents for the loss of society of their children. In *Ford Motor Company v. Durrill*, 714 S.W.2d 329 (Tex.App.1986), the court granted parents $600,000 for the loss of the child's society, observing that "[b]ecause the Supreme Court has only allowed recovery for mental anguish for the death of a child since 1983, there is a paucity of case law that we can examine to see how others

---

7. For a more detailed discussion of the relationship between district court and appellate jurisdiction in the rule 60(b) setting, see our recent

decision in *Brown v. United Ins. Co. of America*, 807 F.2d 1239, 1241 (5th Cir.1987) n. 1.

have viewed reasonable compensation for such a loss by a parent." 714 S.W.2d at 344. Among the cases relied upon was *Gulf States Utilities v. Reed,* 659 S.W.2d 849 (Tex.App.1983, *writ ref'd n.r.e.*), affirming a similar award of $500,000.

Considering the overwhelming scope of the injuries to little Stephanie, and the obvious continuing effect those injuries will have on Jocelyn Bonds, we are not convinced that the trial court's award is so excessive as to warrant appellate intervention.

The judgments in each of the consolidated cases is AFFIRMED.