Barbara **SANDERSON–CRUZ,** Plaintiff,

v.

**UNITED STATES of America,** **Defendant.**

**No. CIV. A. 98–5709.**

United States District Court, E.D. Pennsylvania.

March 6, 2000.

Mark W. Voight, Huntingdon Valley, PA, for Plaintiff.

Richard M. Bernstein, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

LOWELL A. REED, Jr., Senior District Judge.

Presently before the Court is the motion of the defendant, the United States of America, for partial summary judgment (Document No. 10), as well as the response, reply and sur-reply thereto. The plaintiff, Barbara Sanderson–Cruz, commenced this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2674–2680, alleging that she suffered injuries when her car was struck by a postal truck. The United States now moves to strike plaintiff's claim for non-economic losses (pain and suffering), arguing that the Pennsylvania Motor Vehicle Financial Responsibility Law ("PMVFRL"), 75 Pa. C.S.A. § 1701 et seq., precludes Sanderson–Cruz from recovering non-economic loss because she elected the limited tort option and did not suffer a "serious injury." For the reasons set forth below, the motion will be denied.

## I.  Background

On November 26, 1997, Sanderson–Cruz was in the parking lot of the Logan Station Post Office picking up her husband who is a postal employee. Sanderson–Cruz alleges that she pulled into the parking lot and stopped some distance behind a postal truck operated by a postal employee named John McGettigan. Sanderson–Cruz claims that McGettigan backed up his truck and collided with her car, driving it several feet backwards. She claims that she was thrown backward and then forwards by the force of the impact. McGettigan has admitted that he did not look behind him or check his rear view mirror before backing up and that even if he had, the mirrors were out of alignment at the time of the accident.

Sanderson–Cruz claims that she hurt her back, right shoulder and neck in the accident. Although she asserts that she suffered excruciating pain the day after the accident, Sanderson–Cruz did not see her doctor, Anthony R. Rodriguez, M.D., until two days after the accident because it was Thanksgiving. On November 28, 1997, Sanderson–Cruz was treated by Dr. Rodriguez. In his contemporaneous notes, Dr. Rodriguez wrote that as a result of the accident Sanderson–Cruz had increased mid-back and shoulder pain. (Reply Brief in Support of Defendant's Motion for Summary Judgment ("Def.Reply"), Tab 6). He further noted that she was "[p]oint tender mostly over the right thoracic region .... [and h]as decreased range of motion of her right shoulder." (*Id.*). His overall impression was that the accident exacerbated her chronic back injury. (*Id.*). Initially he prescribed an anti-inflammatory/pain reliever and a muscle relaxant to easy the pain and "quiet some of the spasm down." (*Id.*). Shortly thereafter, Dr. Rodriguez prescribed a narcotic painkiller. (*Id.*).

Just prior to the accident, on November 11, 1997, Sanderson–Cruz visited Dr. Rodriguez "for right shoulder pain." (Def. Reply, Tab 6). The notes from the office visit indicate, however, that Sanderson–Cruz had a full range of motion in her right shoulder. (*Id.*). At that time, Dr. Rodriguez prescribed an anti-depressant.

In addition to experiencing shoulder pain prior to the accident, Sanderson–Cruz also had a prior history of lower back pain and numbness in her foot. A January 6, 1998, report by Dr. Rodriguez describes the her relevant prior medical history.

(Plaintiff's Answer to Defendant, United States of America's, Motion For Partial Summary Judgment, ("Plt.Mem."), Exh. B). He states that in January of 1997, Sanderson–Cruz came to him complaining of pain in her leg. A February 19, 1997, MRI showed that she suffered from a herniated disc in her lower back.[1] (Def. Reply, Tab 3). As a result, Sanderson–Cruz treated with an orthopedic surgeon. She underwent physical therapy and received epidural steroid injections which provided relief in both her legs and low back. (Plt.Mem, Exh. B).

Notes from a January 7, 1997, visit to Dr. Rodriguez also indicate that Sanderson–Cruz complained to him of "numbness intermittently in both of her feet over the last few mos." (Def. Reply, Tab 1). Presumably as a follow-up, Sanderson–Cruz also had a neurological exam conducted by Carolyn L. Taylor, M.D., a neurologist. Dr. Taylor's report states that Sanderson–Cruz came to her complaining of "intermittent numbness in her feet which is getting progressively worse." (Def. Reply, Tab 2). Dr. Taylor ordered the aforementioned MRI suspecting that Sanderson–Cruz suffered from severe lumbar-stenosis in her lower back. (*Id.*). As previously noted, the MRI showed a herniated disc.

## II. Standard

Defendants have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.

1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir.1982).

## III. Discussion

Sanderson–Cruz argues that the government's attempt to reduce its liability by asserting that the PMVFRL bars her from making a claim for non-economic damages constitutes an affirmative defense. *See* Fed.R.Civ.Pro. 8(c). Sanderson–Cruz further argues that by failing to set forth the affirmative defense in its pleading or by failing to amend its pleadings to asset the limited tort option defense once it became apparent that Sanderson–Cruz had elected the limited tort option, the government waived its right to raise the issue at summary judgment or, presumably, at trial.

Rule 8(c) states that nineteen listed defenses as well as "any other matter constituting an avoidance or affirmative defense" shall be "set forth affirmatively."[2] Determining whether a given defense is an "affirmative" defense within the meaning of Rule 8(c) is not without its difficulties. According to Black's Law Dictionary, 6th

---

1. A physician's report dated October 21, 1997 and signed by Dr. Rodriguez states that her condition—"herniated disc"—began on March 31, 1997. (Def. Reply, Tab 5).

2. The Rule provides in pertinent part:
   In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assump-

tion of risk, contributory negligence, discharge in fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. . . .
Fed.R.Civ.Pro. 8(c).

ed.1990, an affirmative defense is "[a] response to a plaintiff's claim which attacks the plaintiff's *legal* right to bring an action, as opposed to attacking the truth of the claim." (emphasis in original). An avoidance in the pleadings is defined as "the allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, show cause why they should not have their ordinary legal effect." BLACK's LAW DICTIONARY, 6th ed., 1990. In determining whether a particular argument is an affirmative defense, court consider "the logical relationship between the defense and the cause of action." *Hassan v. United States Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988) (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)). Central to the inquiry is the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings. *Ingraham*, 808 F.2d at 1078. Sanderson–Cruz submits that by raising this issue for the first time at summary judgment after her doctor has been deposed by the government is precisely the type of unfair surprise which Rule 8(c) is intended to preclude.

█ As an initial matter I hold that the limitation on damages in the PMVFRL is an "avoidance" which falls within the scope of the residuary clause of Rule 8(c).³ *See Ingraham*, 808 F.2d at 1079 (statutory limit on liability is affirmative defense); *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir.1975) (same); *see also Maramont Corp. v. B. Barks & Sons*, 1999 WL 55175, 1999 U.S. Dist. LEXIS 278, at *11–*12 (E.D.Pa. Jan. 13, 1999) (discussing circuit split on issue). *But see, Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir.1987) (statute at issue

merely limited liability and was not avoidance or affirmative defense). The limited tort defense shares the common characteristic of a bar to the right to recovery-albeit a partial bar-even if the general allegations in the complaint are more or less admitted to. *Jakobsen*, 520 F.2d at 813. Here, Sanderson–Cruz seeks damages under the traditional tort theory of negligence and seeks full damages. The United States now argues that the pursuant to a statutory limitation, assuming that a recovery is proper under ordinary tort principals, the traditional precedent "should not have their ordinary legal effect." *See Ingraham*, 808 F.2d at 1079 (statutory limit on damages available in medical malpractice cases is affirmative defense which the United States waived by failing to timely plead the defense); *see also Bok Ran Cho v. Packard,* , 1998 WL 720040, 1998 U.S. Dist. LEXIS 16193, at *7 (E.D.Pa. Oct. 8, 1998) (limit or bar on recovery pursuant to limited tort option pled as affirmative defense). I thus conclude that the statutory bar to recovering non-economic damages (absent the statutory exceptions) in the PMVFRL is an affirmative defense which pursuant to Fed. R.Civ.Pro. 8(c) must be timely pleaded by the defendant.

The government argues, nonetheless, that with respect to lawsuits against the United States, the PMVFRL is not an affirmative defense but rather a jurisdictional issue which can be raised at any time. Accordingly to the United States, because the FTCA serves as a waiver of sovereign immunity which must be construed narrowly, the waiver cannot be construed to permit a claim for pain and suffering by a person who has elected the limited tort option under the PMVFRL

---

**3.** I am not, however, persuaded by the plaintiff's argument that the limited liability option is an insurance exclusion and, therefore, must be affirmatively pled. Here, Sanderson–Cruz is not suing her insurer. Thus, cases requiring that an insurer, the party most familiar with the policy and its exclusions, affirmatively plead the applicability of a policy exclusion are inapposite. Indeed, the fact that a defendant can only learn whether the limited tort defense is available after doing some initial discovery weighs against treating the limited tort defense as an affirmative defense. Nevertheless, when weighing this against the potential for prejudicial surprise, especially in light of the liberal policy that leave to amend the pleadings "shall be freely given when justice so requires." I am persuaded that the limited tort defense must be timely pled.

and, therefore, a claim for non-economic damages is jurisdictionally defective unless it meets one of the statutory exceptions. In short, the United States argues that it has not, by virtue of its tardy assertion that the PMVFRL bars the plaintiff from recovering non-economic damages, waived immunity from suit beyond what the PMVFRL allows; namely that any person electing the limited tort option "shall be precluded from maintaining an action for noneconomic loss."

■ I disagree. First, I note that in *Ingraham*, the Court of Appeals for the Fifth Circuit implicitly rejected this argument, holding that a statutory limit on liability not only could be but in fact was waived by the failure of the United States to plead the limitation on liability as an affirmative defense. *Ingraham*, 808 F.2d at 1079; *see also Simon v. United States*, 891 F.2d 1154, 1157 (5th Cir.1990) (limitation on malpractice damages is affirmative defense which, if not timely pled, is waived by defendant). Furthermore, the question here is not immunity from suit, but rather the effect of a statutory limit on liability. *See Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604 (10th Cir.1994) (state statute limiting liability does not implicate questions of sovereign immunity for county). The issue of whether a state statute limiting the liability of a defendant is an affirmative defense does not become a jurisdictional prerequisite merely because the defendant is the United States and is being sued under the FTCA.

■ Indeed, under the Federal Tort Claims Act federal courts are to treat the United States in the same manner and to the same extent as a private individual under like circumstances in order to determine liability. *Davidson v. United States*, 1997 WL 20860, at *2 (E.D.Pa. Jan.14, 1997); *Leftwich v. Ames*, 1996 WL 239865, at *1–*2 (E.D.Pa. May 2, 1996). As such, the United States is similarly situated to a private party regulated by the PMVFRL. *Id.* Thus, to the extent that a private individual must affirmatively plead the limited tort defense, so to must the United States.

Having decided that the limited tort defense is an affirmative defense, I now address whether the United States waived the defense by not pleading it in its answer (or moving to amend its answer to include the limited tort defense as an affirmative defense). Although the Fed.R.Civ.Pro. requires that affirmative defenses be plead in the answer, the Court of Appeals for the Third Circuit has not interpreted this requirement strictly. *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1373 (3d Cir. 1993) ("Failure to raise an affirmative defense in a responsive pleading, however, does not always result in waiver."). An affirmative defense is not waived if raised "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir.1991) (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir.1986)). A motion for summary judgment, "while not the most appropriate way to raise a previously unpled defense," may nonetheless be appropriate if the plaintiff is not prejudiced. *Kleinknecht*, 989 F.2d at 1374; *Int'l Poultry Processors, Inc. v. Wampler Foods, Inc.*, 1999 U.S. Dist. LEXIS 7025, at *8–*9 & n. 6 (E.D.Pa. Apr. 29, 1999) (collecting cases where affirmative defense raised for first time at summary judgment not held to have been waived).

■ Although the United States has been derelict in raising this defense, I find that evidentiary record on this issue is extensive and that the discovery to date is sufficient for Sanderson–Cruz to successfully oppose the motion of the United States for summary judgment.[4] Because

---

4. The suggestion that "[h]ad Plaintiff known Defendant would make the 'serious injury' requirement of limited tort an issue, obviously she would have prepared for her own deposition and that of Dr. Rodriguez accordingly," does little to persuade the Court that Sanderson–Cruz has been unduly prejudiced. (Plt. Mem. at 9). The Court nevertheless recognizes possibility that her doctor may not have been as precise as he could have in his deposition had he focused his attention on this

Sanderson–Cruz has not been prejudiced in her ability to respond to the motion, I find that the defense has not been waived.

■ Before reaching the merits of the issue of whether the election of the limited tort option by Sanderson–Cruz bars her from recovering non-economic damages, however, another preliminary issue must be addressed. Sanderson–Cruz asserts that regardless of whether she suffered a serious injury, the PMVFRL, by its very language, does not apply to the United States government. 75 Pa.C.S.A. § 1703 (stating the "this act does not apply with respect to any motor vehicle owned by the United States"). In *Leftwich,* the court was faced with the identical argument. Judge Padova reasoned that section 1703 did not by its terms prevent the Court from determining whether the PMVFRL prevented *the plaintiff* from recovering non-economic damages where *the plaintiff* elected the limited tort option. I concur.

Section 1703 states that the act does not apply to any motor vehicle owned by the United States, not that vehicle owned by *private citizens* are exempt from the terms of the PMVFRL if struck by a vehicle owned by the United States. Thus, rather than allowing private citizens who elect the limited tort option to sue the United States for non-economic damages absent the existence of a statutory exception, section 1703 merely recognizes that the financial responsibility requirements of the statute do not apply to the United States. It does not address the situation presented here, namely whether the PMVFRL serves to limit the recovery of a victim based upon an election made by the victim prior to the accident. I thus agree with the conclusion reached by of Judge Padova that § 1703 does not prevent the Court from determining whether the United States is liable under a "like circumstances" approach and

whether the PMVFRL permits *the plaintiff* from recovering for non-economic loss. *See id.*

Having concluded that the United States is similarly situated to a private party, *see Davidson,* 1997 WL 20860, at \*2, and the section 1703 does not, *per se,* preclude the statute from limiting the recovery of a private individual suing the United States, I ʻ must now determine whether the PMVFRL bars Sanderson–Cruz from recovering non-economic damages. Under the PMVFRL motorist may elect the "limited tort option." "Limited" refers to the type of compensation recoverable:

> Under this form of insurance, you ... may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of the other exceptions noted in the policy applies.

75 Pa.C.S.A. § 1704(a)(i)(A). It is undisputed that Sanderson–Cruz and her husband elected the limited tort option. Therefore, in order to maintain an action for non-economic damages, the injury Sanderson–Cruz suffered must fall within the definition of "serious injury." [5]

Neither the statute nor the legislative history provide any guidance in determining what constitutes a serious injury. *See* 75 Pa.C.S.A. § 1702 (defining "serious injury" as " a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement"); *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733, 740 (1998). In *Washington,* however, the Pennsylvania Supreme Court adopted the analysis of what constitutes a "serious impairment of a body function" employed in *Di Franco v. Pickard,* 427

---

issue prior to the deposition. Moreover, there is some merit to the plaintiff's argument that her doctor prepared three separate expert reports, the scope of which may not have intended to address or include directly the issue of the seriousness of plaintiff's injury. The Court is thus mindful of the circumstances

and will weigh the evidence presented by the plaintiff accordingly.

**5.** It is undisputed that none of the "other" statutory exceptions apply. *See* 75 Pa.C.S.A. § 1705(d).

Mich. 32, 398 N.W.2d 896, 900–01 (1986). The inquiry is limited to: (a) what body function, if any, was impaired, because of the injuries sustained in the motor vehicle accident; and (b) was the impairment of the body function serious. *Washington,* 719 A.2d at 740. The focus is not on the injuries but on how the injuries affected a particular body function with medical testimony generally required to establish the existence, extent, and permanency of the impairment, although an impairment need not be permanent to be serious. *Id.*

In addition, the Court expressly held that the threshold determination of whether a serious injury has been sustained is an issue of fact to be left to the fact-finder, unless reasonable minds could not differ on the issue. Indeed, the Court noted that even if the parties agree on the nature and extent of the injuries and there is no genuine dispute over the facts, if the facts can support conflicting inferences, summary judgment should not be granted. *Id.* at 740 n. 10.

The United States argues that this is one of those "clearest of cases" in regard to the seriousness of the injury upon which summary judgment may be granted. The United States argues that the medical evidence shows that Sanderson–Cruz suffered from chronic lower back pain prior to the accident and that her inability to work was unrelated to the accident but rather stemmed from her pre-existing condition. Thus, the United States argues that Sanderson–Cruz has not produced sufficiently probative medical evidence to support a finding that she suffered any injury as a result of the accident, let alone a serious injury.

■ I disagree. Sanderson–Cruz has presented evidence sufficient to support an inference that she suffered a bodily impairment as a result of the accident. The

medical record reveals that on November 14, 1997, approximately two weeks prior to the accident, Sanderson–Cruz had full range of motion in her right arm. (Def.Reply, Exh. 6). When she was examined two days after the accident she had limited range of motion in her right arm. (*Id.*). In addition, after the accident her doctor prescribed an anti-inflammatory and pain reliever to easy the pain and "quiet some of the spasm down." (*Id.*). Thereafter, her doctor prescribed a narcotic pain killer to combat pain.[6] (*Id.*). In addition, her doctor has testified at his deposition that Sanderson–Cruz's lower back problems had essentially resolved by the time of the accident. (Rodriguez Dep. at 66). Thus, there is genuine issue of material fact as to whether the accident caused Sanderson–Cruz to re-injure or cause her lower back condition to be aggravated or whether the accident did not in fact cause her any injury.

■ Sanderson–Cruz has also introduced evidence sufficient preclude summary judgment on the issue of whether the injury she suffered as a result of the accident was a "serious injury." The testimony of Sanderson–Cruz, the expert medical evidence and the contemporaneous medical records support an inference that as a result of the accident, Sanderson–Cruz continues to have pain in her back and neck, cannot perform her former job as a physical therapy aid because of physical limitations and cannot enjoy some of life's many pleasures such as gardening, horseback riding and sexual intercourse.[7] Finally, Sanderson–Cruz has offered evidence that her injury may be permanent. Thus, this case is not "free and clear from doubt" such that reasonable minds could not differ on the issue of whether Sanderson–Cruz sustained a serious injury.

---

**6.** The fact that her doctor had prescribed the same pain killer some two months before is not inherently inconsistent with the proposition that her condition improved prior to the accident caused her to re-injure herself. In any case, at summary judgment, Sanderson–

Cruz is entitled to the inference that the accident caused her subsequent injury.

**7.** The order in which the these activities are presented is in no way intended to express the Court's view of their relative importance or the credibility of the contentions.

*Washington,* 719 A.2d at 740 n. 10; *Furman v. Shapiro,* 721 A.2d 1125, 1127 (Pa.Super.1998) (injury to back evidence by bulging disc and where plaintiff reduced her work status from full to part-time, could not lift heavy object, experienced symptoms over period of years and treatment included some physical therapy and home exercises, reasonable minds could differ as to whether plaintiff suffered serious injury); *Hames v. Philadelphia Hous. Auth.,* 737 A.2d 825, 829 (Pa. Cmwlth.1999) (attacks on weight and credibility of evidence from plaintiff, and psychiatrist where medical records showed physical injuries resolved within months and not objectively manifested may not be resolved at summary judgment). Therefore, summary judgment is inappropriate.

## IV. Conclusion

Based upon the foregoing, the motion for summary judgment will be denied. An appropriate Order follows.

## *ORDER*

**AND NOW,** this 6th day of March, 2000, upon consideration of the motion of the defendant, the United States of America, for partial summary judgment (Document No. 10), the response, reply and sur-reply thereto, and the supporting memoranda, pleadings, discovery record, exhibits and affidavits submitted by the parties, having found that there are genuine issues of material fact and that the defendant is not entitled to judgment as a matter of law, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion is **DENIED.**

**IT IS FURTHER ORDERED** that the parties shall submit a joint report to the Court no later than **March 31, 2000** as to the status of settlement. If the parties need the assistance of the Court in facilitating settlement negotiations, the report shall so indicate. By said date, plaintiff shall contact the Deputy Clerk to arrange a date for a final scheduling conference.