**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Wayne Earl ELLISON,**
**Defendant-Appellant.**

Nos. 76–1262, 77–1472.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 18, 1976.

Decided June 29, 1977.

John D. Clouse, Evansville, Ind., for defendant-appellant.

James B. Young, U. S. Atty., Bradley L. Williams, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CLARK, Associate Justice,* CASTLE, Senior Circuit Judge, and BAUER, Circuit Judge.

BAUER, Circuit Judge.

Defendant-appellant Ellison was tried by a jury on a multiple-count indictment charging him with conspiracy to distribute controlled substances and with several counts of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1). The evidence presented at trial showed that Ellison, a pharmacist, conspired with a physician[1] to distribute controlled substances without a legitimate medical purpose. Upon conviction, Ellison received an 18-month prison sentence on the conspiracy count and 18-month concurrent sentences on the substantive counts. After perfecting an appeal from his convictions, Ellison filed a motion for a new trial in the district court, which was denied for lack of jurisdiction. Ellison then filed a separate notice of appeal from the district court's post-trial ruling, and we ordered that appeal docketed and consolidated with the appeal he brought from his convictions.

Ellison proposes several grounds for overturning his convictions and urges us to reverse the district court's order denying his motion for a new trial. He contends (1) that extrajudicial admissions used against him at trial were made involuntarily because induced by promises of leniency; (2) that he was denied the effective assistance of counsel at trial; (3) that the district court erred in refusing to admit evidence he offered to rebut the Government's proof of an overt act in furtherance of the conspiracy; and (4) that he was sentenced on counts under which he was not convicted.

We affirm his convictions and the district court's post-trial ruling for the reasons noted below.

I.

■ Ellison's principal claim is that the district court erred in denying his pretrial motion to suppress allegedly involuntary statements made to agents of the Federal Drug Administration, the Indiana State Police and the Evansville Police Department. Ellison contends that he was told by federal drug agents auditing his pharmaceutical records that "You have a clean bill of health. We are satisfied with the audit." Construing that statement as an implied promise of immunity from prosecution, Ellison says that it was only because of that promise that he agreed to waive his *Miranda* rights and cooperate in the state and federal investigations that led to his arrest, trial and convictions. He reasons from this assertion that the statements he made to various federal and state agents were involuntary because, had he known he was a

---

* The Hon. Tom C. Clark, Associate Justice of the United States Supreme Court (Retired), sat by designation. This opinion was approved by Mr. Justice Clark prior to his death.

1. The physician was tried and convicted with Ellison, but died before his appeal was decided.

We entered an order dismissing his appeal as moot, vacating his conviction and remanding the case for dismissal of the indictment as to him. *United States v. Moehlenkamp*, 557 F.2d 126 (7th Cir. 1977).

target of the investigations, he would not have waived his right to remain silent and made the incriminating admissions later used against him at trial.

The principal flaw in Ellison's argument is that it proceeds from the erroneous premise that he was told by federal drug agents that he had a "clean bill of health." After hearing the evidence presented at the pretrial suppression hearing, the district court expressly found that the agents never told Ellison that he had a clean bill of health or that he was not a subject of their investigation. Crediting the agents' testimony, the district court determined that the agents in fact told Ellison that they were turning the results of their investigation over to the United States Attorney. Ellison does not challenge the district court's findings as clearly erroneous, and we do not believe that they are. In view thereof, we deem Ellison's implied-promise-of-immunity argument patently frivolous and hold that his extrajudicial admissions were properly used against him at trial.

## II.

Ellison next contends that he was denied the effective assistance of counsel at trial. Recognizing that the facts underlying his claim are not part of the trial record submitted to us on direct appeal from his convictions and correctly anticipating that we would not overturn his convictions on the basis of matters outside the trial record, Ellison filed a motion for a new trial in the district court after perfecting an appeal from his convictions and attached to the motion an affidavit setting forth the facts upon which he bases his incompetency-of-counsel claim. The facts alleged therein suggest that Ellison's privately retained counsel was inadequately prepared for trial and made numerous tactical errors in the course of the trial, such as refusing to take issue with allegedly inaccurate statements made at trial and declining to call various witnesses at the defendant's behest, including Ellison himself. Finding that the underlying facts were known to Ellison at the time of trial and thus could not be "newly discovered" evidence, the district court denied his motion for lack of jurisdiction because it was untimely filed under Rule 33 of the Federal Rules of Criminal Procedure. Ellison filed a separate notice of appeal from the district court's order so that he might obtain review of the ruling in concert with his direct appeal from his convictions.

As Ellison anticipated, we decline to pass upon the merits of his ineffective-assistance-of-counsel claim on direct appeal from his convictions, for the facts upon which his claim is founded are not part of the trial record. We also affirm the district court's denial of his motion for a new trial for the reasons given below.

■ We address at the outset certain threshold issues posed by Ellison's appeal from the district court's order denying his motion for a new trial. Because Ellison filed a separate notice of appeal from the district court's order, we believe we have jurisdiction under 28 U.S.C. § 1291 to review the district court's ruling in concert with Ellison's direct appeal from his conviction. *Richardson v. United States*, 360 F.2d 366, 369 (5th Cir. 1966); see *United States v. Hays*, 454 F.2d 274, 275 (9th Cir. 1972). We note, however, that there is some question as to whether the district court itself had jurisdiction to entertain a motion for a new trial while an appeal from Ellison's conviction was pending in this Court. One Circuit appears to take the view that the filing of a notice of appeal from a criminal conviction ousts the district court of jurisdiction to consider any post-trial motions related to a case pending on appeal. *United States v. Johnson*, 487 F.2d 1318, 1321 (5th Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974). Other Circuits, however, take the position that Rule 33, in barring district courts from granting motions for a new trial while appeals are pending, implicitly authorizes the district courts to hear and deny such post-appeal motions. *United States v. Hays, supra* at 275; *Rakes v. United States*, 163 F.2d 771, 772–73 (4th Cir. 1947), *cert. denied*, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948). We believe it necessary to resolve this issue here, for,

unless the district court had the power to entertain Ellison's motion for a new trial while an appeal from his convictions was pending, there is no reason to reach the question of whether his motion was based on "newly discovered" evidence and thus timely filed under Rule 33.

Ordinarily, the filing of a timely notice of appeal from a final judgment ousts the district court of jurisdiction to proceed further in the case except in aid of the appeal. *Elgen Mfg. Co. v. Ventfabrics, Inc.*, 314 F.2d 440, 444 (7th Cir. 1963). However, this general rule is subject to the exception that a district court may consider such matters as authorized by statute or rule. *Id.* Pursuant to that exception, we have held that district courts may reach the merits of motions filed under Rule 60(b) of the Federal Rules of Civil Procedure while an appeal is pending, including motions for a new trial based on allegations of newly discovered evidence. E. g., *Washington v. Board of Education*, 498 F.2d 11, 15–16 (7th Cir. 1974); *Binks Mfg. Co. v. Ransburg Electro-Coating Corp.*, 281 F.2d 252, 260–61 (7th Cir. 1960), *cert. dismissed*, 366 U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239 (1961). Under the approved procedure, the district court may either deny the motion on the merits without seeking leave to do so from this Court or, if disposed to grant the motion, certify its determination so that a motion for remand of the pending appeal may be favorably entertained in the court of appeals. We believe this procedure adopted for civil cases should be extended to criminal cases as well and that Rule 33 of the Federal Rules of Criminal Procedure supports such an extension.

■ To be sure, Rule 33 expressly prohibits district courts from granting motions for a new trial while appeals from related convictions are pending in the courts of appeals. However, there is nothing in the Rule itself or in the Advisory Committee Notes appended thereto that prevents the district courts from entertaining such motions while the related appeals are pending. Indeed, it is reasonable to assume that the Rule was intended to authorize the district

courts to do so, for otherwise the prohibitory language of the Rule would be only a superfluous declaration of pre-existing law. Moreover, construing the Rule to permit consideration of motions for a new trial on the merits while appeals are pending permits expeditious dispositions of such motions and obviates the need for us to spend time reviewing requests for the remand of appeals for consideration of post-trial motions that often prove to be frivolous. Accordingly, we adopt the view of other courts and commentators that, by negative implication, Rule 33 authorizes district courts to entertain motions for a new trial while appeals from the related convictions are pending in the court of appeals. *United States v. Hays, supra* at 275; *Richardson v. United States*, 360 F.2d 366, 368–69 (5th Cir. 1966); *Rakes v. United States, supra* at 772–73; 8A *Moore's Federal Practice* ¶ 33.03[2], at 33–17; 2 Wright & Miller, *Federal Practice and Procedure*, § 557, at 534–35. This assumes, of course, that the motions are otherwise timely filed under Rule 33, *i. e.*, within seven days of verdict or within two years of judgment if based on newly discovered evidence. Should the district court be disposed to deny the motion on the merits, the court may do so without seeking leave from the court of appeals. The defendant may then take a separate appeal from the district court's ruling and move to have it consolidated with the direct appeal previously taken from his conviction. If the motion has merit, the district court should certify that it would grant the motion on remand, so that a petition to remand the pending appeal may be favorably entertained in the court of appeals.

■ Having determined that Ellison's pending appeal from his convictions raised no jurisdictional barrier to consideration of his motion for a new trial, we turn to the question of whether the district court correctly ruled that his motion was untimely filed because it was not based on "newly discovered" evidence within the meaning of Rule 33. Ellison does not dispute the district court's finding that the facts underlying his ineffective-assistance-of-counsel

claim were known to him at the time of trial. He argues, however, that his motion alleging the ineffective assistance of counsel still should have been treated as one in the nature of "newly discovered" evidence for otherwise defendants dissatisfied with their trial counsel's performance will be unable to bring such claims by way of motions for a new trial within the time limitations imposed by Rule 33. He urges us to follow *United States v. Brown*, 155 U.S.App.D.C. 177, 476 F.2d 933, 935 (1973), which states that "evidence of the ineffectiveness of trial counsel . . . brought to the attention of the court for the first time in support of [a motion for a new trial] is 'newly discovered' for . . . purposes of Rule 33."

We recognize that defendants unhappy with the representation they received at trial, particularly those unable to retain counsel privately as did Ellison, often will be unable to obtain a new attorney in sufficient time to permit them either to file a motion for a new trial within the seven days of verdict required by Rule 33, or else to seek an extension of time for the filing of such a post-trial motion as permitted by the Rule. The practical difficulties faced by defendants seeking to raise ineffective-assistance-of-counsel claims by way of motions for a new trial, however, do not give us cause to corrupt the clear language of Rule 33. Newly discovered evidence must be newly discovered. Where, as here, the facts alleged in support of a motion for a new trial were within the defendant's knowledge at the time of trial, such a motion may not be treated as one in the nature

of newly discovered evidence for purposes of Rule 33. *United States v. Demopoulos*, 506 F.2d 1171, 1180–81 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975). Accordingly, the district court did not err in determining that Ellison's motion was not one based on "newly discovered" evidence and therefore dismissing it for want of jurisdiction because it was untimely filed.

We acknowledge that our holding is in apparent conflict with *Brown* and other decisions of the District of Columbia Circuit, which support the view that a defendant may raise an ineffective-assistance-of-counsel claim and support it with evidence *dehors* the trial record by way of a motion for a new trial treated as one based on "newly discovered" evidence even if the facts underlying that claim were known to the defendant at the time of trial.** 476 F.2d 935 n.11; *United States v. Thompson*, 154 U.S.App.D.C. 347, 475 F.2d 931, 932 & n.4 (1973); *United States v. Smallwood*, 153 U.S.App.D.C. 387, 473 F.2d 98, 104 (1972) (Bazelon, J., concurring). That Circuit's relaxation of normative notions of "newly discovered" evidence,[2] however, apparently is prompted by its view that a "more powerful" showing of counsel's inadequacy is necessary to sustain a collateral attack on a conviction than would be necessary to obtain a favorable ruling on a motion for a new trial. *United States v. Thompson, supra*, 154 U.S.App.D.C. 347, 475 F.2d at 932 n.3, citing *Bruce v. United States*, 126 U.S. App.D.C. 336, 379 F.2d 113, 117 (1967). We do not share that view.[3] The constitutional

---

** In view of what is arguably a conflict between our views and those of the District of Columbia Circuit in the *Brown* case, the portions of this opinion relevant to our holding have been circulated among all judges of this Court in regular active service. No judge favored a rehearing en banc with respect to that holding.

**2.** To warrant granting a motion for a new trial based on newly discovered evidence, it must be shown (1) that the evidence was discovered since the trial; (2) that the evidence could not have been discovered sooner with the exercise of due diligence; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is so material that it probably would

produce a different verdict. *United States v. Curran*, 465 F.2d 260, 264 (7th Cir. 1972).

**3.** To be sure, a collateral attack proceeding brings into play the "strong interest in preserving the finality of judgments," *Henderson v. Kibbe*, —— U.S. ——, —— n.13, 97 S.Ct. 1730, 1737 n. 13, 52 L.Ed.2d 203 (1977), and very practical considerations may motivate courts to mandate that a "heavier" evidentiary burden be borne on collateral attack than on direct appeal. See *Garton v. Swenson*, 497 F.2d 1137, 1139–40 n.4 (8th Cir. 1974). However, the same finality interest and practical considerations come into play where, as here, a motion

standards governing adjudication of ineffective-assistance-of-counsel claims do not vary, in this Circuit at least, with the nature of the proceedings in which such claims are raised. When a criminal defendant has shown that he was not provided trial counsel who met "minimum standards of professional representation," the fact that the showing was made in a proceeding collaterally attacking a criminal conviction has not deterred us from enforcing the provisions of the Sixth Amendment.[4] E. g., *United States ex rel. Spencer v. Warden*, 545 F.2d 21 (7th Cir. 1976); *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). Unlike the District of Columbia Circuit, we have no reason to doubt the adequacy of post-conviction remedies for petitioners such as Ellison who urge vacation of their convictions by reason of constitutionally deficient trial representation that could not be argued on direct appeal because based on evidence outside the trial record.[5] Ellison and similarly situated defendants can raise their Sixth Amendment claims and support them with evidence outside the trial record in post-conviction proceedings pursuant to 28 U.S.C. § 2255 or, if necessary, by way of an application for a writ of coram nobis. *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

Accordingly, without prejudice to Ellison's right to raise his ineffective-assistance-of-counsel claim in a post-conviction proceeding under 28 U.S.C. § 2255, we affirm the district court's dismissal of his motion for a new trial for want of jurisdiction and decline to pass upon the merits of his Sixth Amendment claim on direct appeal from his convictions because it speaks to matters outside the trial record.

### III.

Ellison next contends that the district court erred in excluding evidence offered by him to rebut the Government's proof of an overt act in furtherance of the conspiracy. The overt act charged was the installation of a private telephone line between Ellison's pharmacy and his codefendant's office. To prove the overt act, the Government introduced telephone company records and elicited testimony from a company official showing the existence of the direct private line installed at Ellison's request. On cross-examination of the witness, Ellison's counsel sought to introduce the telephone company records of four other pharmacies in the Evansville area for the purpose of showing that it was a "common practice" to have such direct lines installed between pharmacies and physicians' offices. The Government objected to the admissibility of the records on the ground of relevancy. Sustaining the Government's objection, the trial judge informed defense counsel that he would permit Ellison to put on a properly qualified witness to testify to the existence of the general practice or custom at a later time, but would not admit the records of specific pharmacies on cross-ex-

for a new trial based on newly discovered evidence is filed more than seven days after verdict. *Brodie v. United States*, 111 U.S.App.D.C. 170, 295 F.2d 157, 159–60 (1961) (Burger, J.); see 2 Wright & Miller, *supra* at 515–16.

**4.** We note that the harsh "farce or mockery" standard for reviewing ineffective-assistance-of-counsel claims prevailed in the District of Columbia Circuit at the time *Brown, Thompson* and *Bruce* were decided. That may explain, in part, that Circuit's aversion to remitting defendants raising such claims to post-conviction remedies. See *United States v. Smallwood, supra* 153 U.S.App.D.C. 387, 473 F.2d at 103. Yet, though the Circuit has liberalized its ineffective-assistance-of-counsel standard, it appears still to adhere to the view that a different standard applies on direct appeal than on col-

lateral attack. See *United States v. DeCoster*, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1201–02 (1973).

**5.** The suggestion has been made that miscarriages of justice correctable on appeal though not rising to the level of constitutional error could not be reached on collateral attack. *United States v. Agurs*, 171 U.S.App.D.C. 350, 520 F.2d 82, 83–84 (1975) (Leventhal, J., concurring). See, however, *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Gates v. United States*, 515 F.2d 73, 76–77 (7th Cir. 1975); *Kyle v. United States*, 297 F.2d 507, 511 n.1 (2d Cir. 1961), *cert. denied*, 377 U.S. 909, 84 S.Ct. 1170, 12 L.Ed.2d 179 (1964).

amination to rebut the Government's proof of the overt act charged. Ellison, claiming that his offer of proof would have negated the inference of conspiracy created by the Government's proof that there was a private telephone line between his pharmacy and his codefendant's office, assigns the district court's ruling as error.

We believe that the question of the relevancy of the records Ellison sought to introduce would be a close one, had he offered the records during his case-in-chief rather than on cross-examination. The Government did elicit testimony from other witnesses for the purpose of showing that the existence of this private line was to be viewed with suspicion and as some evidence that a conspiracy existed. Accordingly, Ellison would have been entitled to show during his case-in-chief that the installation of a private line between a pharmacy and a physician's office was not as uncommon as the Government would have the jury believe. But, even if we assume that the records would have been relevant rebuttal evidence if offered during the presentation of Ellison's own case, we need not thereby conclude that the district court erred in excluding the evidence at the time it was offered.

■ Cross-examination should be limited to the scope of matters brought out on direct, and trial judges are vested with broad discretion to determine whether questions posed or evidence offered on cross-examination is relevant to the subject matter presented on direct. Fed.R.Evid. 611(b); *United States v. Isaacs*, 493 F.2d 1124, 1162 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *United States v. Cole*, 449 F.2d 194, 199 (8th Cir. 1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972). At the time Ellison offered the records into evidence, the witness under examination was an employee of the telephone company through whom the Government proved only that Ellison had installed a private telephone line to his co-

defendant's office. In establishing the existence of the private line, the Government simply was proving up an overt act alleged in the indictment and not putting at issue the frequency of the practice of installing such private lines between pharmacies and physicians' offices. On cross-examination Ellison attempted to put the custom in the pharmaceutical trade at issue by showing that four other Evansville pharmacies had installed private lines to the offices of physicians. This proof, however, did not in any manner rebut the Government's proof of the overt act charged or any testimony of the witness under cross-examination.[6] Accordingly, we do not believe the district court erred in rejecting Ellison's offer of proof. The court's action can reasonably be viewed as an exercise of its discretion to control the order of proof, for the court did invite Ellison to later put on witnesses or other evidence to show that installation of private lines was a "common practice" of Evansville pharmacies.

## IV.

■ Finally, Ellison claims that he was sentenced under counts for which he was not convicted. He notes that, although the jury convicted him of counts 1 and 24 through 30, he was sentenced under counts 1, 60, 63, 65, 67, 68, 74 and 78 of the indictment. Ellison concedes that the only reason for the variance in the numbering of the counts submitted to the jury and those alleged in the indictment is that the district court, *with the consent of the parties*, renumbered the counts submitted to the jury after the Government had dismissed many of the 80 counts initially charged in the indictment. Nevertheless, Ellison claims that the district court committed plain error in renumbering the counts.

We believe that Ellison's argument is patently frivolous and decline to hold that the trial judge committed plain error by renumbering the counts before submitting the case to the jury. Moreover, we are

---

**6.** The records would have been relevant, of course, had they been offered during cross-examination of the other witnesses who testified,

in effect, that it was unusual to have a direct private line installed between a pharmacy and a physician's office.

convinced that any error Ellison has alleged would necessarily be harmless beyond a reasonable doubt for no prejudice could have resulted from the procedure: apart from the different numbering, the counts on which the jury convicted Ellison were identical to the counts under which he was sentenced.

AFFIRMED.