106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tommy Joe BARROW, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 96-1687.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1997.
 
 Before: KENNEDY, BOGGS, and WOOD, Circuit Judges.*
 KENNEDY, Circuit Judge.
 
 
 1
 Defendant pro se appeals the District Court's denial of his motion for a new trial on the grounds of newly discovered evidence. For the following reasons, we AFFIRM.
 
 I.
 
 2
 On September 28, 1994, a jury convicted defendant of one count of making false statements in connection with a bank loan application, in violation of 18 U.S.C. § 1014 (Count One); one count of bank fraud, in violation of 18 U.S.C. § 1344 (Count Two), three counts of income tax evasion, in violation of 26 U.S.C. § 7201 (Counts Five, Nine, and Eleven); and six counts of making or subscribing false tax returns or false amended tax returns,[1] in violation of 26 U.S.C. § 7206 (Counts, Six, Ten, and Twelve through Fifteen). On October 18, 1994, defendant replaced his trial counsel with new counsel to handle post-trial motions and appeals. A direct appeal of defendant's conviction is pending before this Court.
 
 
 3
 After holding a sentencing hearing, the District Court sentenced defendant on June 5, 1995, to imprisonment for concurrent terms of 21 months, a fine of $11,000.00, restitution to Great Lakes Bancorp in the amount of $39,000.00, restitution to the Internal Revenue Service in the amount of $42,195.71, and a special assessment of $550.00. On February 9, 1996, defendant filed a pro se Motion for Certification for a New Trial Based Upon Newly Discovered Evidence. The District Court denied the motion on May 9, 1996. This timely appeal followed.
 
 II.
 A.
 
 4
 FED.RULE CRIM.P. 33 provides that "[a] motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case." At the time defendant filed his motion, a direct appeal of his conviction was pending. Hence, the District Court did not have power to grant the motion absent a remand. See FED.R.CRIM.P. 33. Defendant therefore properly moved the District Court pursuant to the procedure delineated in United States v. Blanton, 697 F.2d 146, 147-48 (6th Cir.1983) (per curiam). Blanton holds that a district court can certify to the appellate court that it is inclined to grant a motion for a new trial so that the appellate court can consider a remand to the district court. See id. (citing United States v. Phillips, 558 F.2d 363 (6th Cir.1977)). Here, the District Court was satisfied that it would not grant the motion for new trial in any event, so he denied the motion outright. In such a situation, an immediate appeal may be taken and consolidated with the pending appeal. See id. at 148. Accordingly, we have jurisdiction to review. See id.
 
 B.
 
 5
 "Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent 'clear abuse of discretion.' " United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986) (quoting United States v. Allen, 748 F.2d 334, 337 (6th Cir.1984) (per curiam). The defendant bears the burden of showing that a new trial ought to be granted. United States v. Seago, 930 F.2d 482, 488 (6th Cir.1991). Specifically, for the discovery of new evidence to warrant a new trial, a defendant must show the following: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce acquittal. See id. We must bear in mind that newly discovered evidence does not include new legal theories. See Seago, 930 F.2d at 490. "A claim '[b]elatedly pursued is not newly discovered.' " Id. (quoting United States v. Molovinsky, 688 F.2d 243, 248 (4th Cir.1982)).
 
 1.
 
 6
 Defendant first contends that the District Court erred in not granting a new trial on Counts Five and Six on the grounds of newly discovered evidence that the 1985 tax deficiency was computed contrary to tax law and Internal Revenue Service (IRS) publications. At trial, defendant argued that even if he had underreported income, he still would have had no tax liability. The government, however, established a tax deficiency through the Alternative Minimum Tax (AMT), 26 U.S.C. § 55. At the sentencing hearing, defendant presented the testimony of Neil Nusholtz, a tax lawyer who had not testified at trial and who defendant hired after trial. Nusholtz disputed the government's AMT calculation, claiming that it was contrary to IRS rules. He testified that his calculation was proper and resulted in no tax liability.[2]
 
 
 7
 Defendant has not established that a new trial is warranted on the basis of this evidence. Nusholtz's calculation and the IRS publications are not "newly discovered evidence." Rather, defendant is attempting to relitigate his case under a new theory by hiring a new lawyer and a new expert to reinterpret the legal significance of evidence that was either presented or available at trial, namely defendant's 1985 tax return. Rule 33 and the first prong of the Seago test require that the evidence, not merely the legal implications of the evidence, be newly discovered. See Seago, 930 F.2d at 488, 489. Moreover, he has not shown that the evidence could not have been discovered earlier with due diligence. We see no reason why defendant's trial team, which included two tax experts, could not have found the same IRS publications or have made the same calculations at the time of trial. Indeed, defendant's new tax expert testified at the sentencing hearing that the alleged errors in the AMT calculation "were right there. You could see them right away." Finally, the District Court considered and rejected Nusholtz's testimony when determining defendant's sentence. It is therefore unlikely that the evidence would result in an acquittal. Because defendant has failed to satisfy the Seago test, we conclude that the District Court did not abuse its discretion in denying defendant a new trial on the basis of this evidence.
 
 2.
 
 8
 Defendant next asserts that he deserves a new trial on Counts Nine through Twelve, because he has discovered exculpatory evidence in the records of defendant's accounting firm, Barrow, Aldridge & Co. Defendant's tax evasion and false tax return convictions for 1987 and 1988 were based in part on unreported income that the defendant received from New Center Hospital (Hospital) and Central City Health Services (Central City).[3] Defendant was also convicted of filing false amended corporate tax returns for his accounting firm. In the firm's returns, defendant reported income from the Hospital which the government proved was income he should have personally reported.
 
 
 9
 At trial, defendant claimed that this income actually constituted loan repayments from the firm. In other words, defendant asserted that the Hospital and Central City paid the firm for his services and the firm used this income to repay defendant for loans he had made to the firm. Defendant claimed that these transactions were evident in the firm's books. The government's witness testified that he could not find any entries in the firm's books which supported defendant's claim.
 
 
 10
 At the sentencing hearing, defendant's new expert witness, Nusholtz, identified certain balances in the firm's general ledger which he testified were adjustments to the loan account, thereby supporting defendant's claim. This ledger had been presented at trial as Government Exhibit 526. The government's witness had testified at that time that there was a mathematical difference between certain entries in the ledger, but no indication of the reason for the discrepancy.
 
 
 11
 At first glance, it is hard to see how this evidence can be "newly discovered" or how it could not have been discovered earlier with due diligence. The facts supporting defendant's claim were within his knowledge at the time of trial. Indeed, the accounting firm's general ledger and records were submitted as evidence, and, when he testified, defendant could have pointed out the relevant entries. To support his contention that this evidence is "newly discovered," however, defendant maintains that the government "denied the defendant, a certified public accountant, supervised personal access to his accounting firm's books and records and tax return preparation workpapers so that he could obtain the necessary documents to disprove the [government's] claim." Brief for Defendant-Appellant at 16. Defendant claims that his attorney requested twice that defendant have personal access to his "records." Defendant admits that one of his tax experts was permitted to see the "records." In his brief, defendant does not explain specifically what "records" he was not permitted to see, but in one of his briefs to the District Court in support of his motion for a new trial, he "admits without hesitation that he had the general ledger" at the time of trial. Consequently, defendant cannot claim that the general ledger, or any evidence contained within it, is "newly discovered" evidence. See Seago, 930 F.2d at 488.
 
 
 12
 Realizing this, defendant tries to focus his argument on the fact that he was denied personal access to his tax return workpapers, which he says are necessary for understanding the ledger entries. He concedes, however, that his tax expert was permitted access to the tax return workpapers. But he nevertheless maintains that this expert, a former IRS agent, was unfamiliar with the workpapers and records and, therefore, was unable to locate the alleged loan entry. If he had had access to the papers, defendant argues, he could have identified the relevant entries.
 
 
 13
 We still fail to see how this evidence is "newly discovered" or how it could not have been discovered earlier with due diligence. The first prong of the Seago test requires that the evidence be unknown to the defendant at the time of trial. See Seago, 930 F.2d at 488. Either defendant or his trial team had access to all of the documents which defendant claims establish that the loan transaction occurred. Moreover, he admits that he told his counsel while preparing for trial that the entries were in the books. Therefore, defendant had within his knowledge all of the facts and materials necessary to make this argument at trial. Indeed, in an affidavit filed in support of defendant's motion for a new trial, defendant's expert trial witness, a certified public accountant, states that while preparing for trial and doing the tax calculations, he "understood" that such entries had been made in the books, but that he was never asked by defense counsel during trial about these entries. Additionally, during his own testimony, defendant could have explained his analysis of the books by using the exhibits; his brief in fact suggests that it would not have taken him long to find the alleged key entries. We do not know why defense counsel chose not to pursue this defense theory, but it is not our role here to question that decision. If anything, defendant has shown only a failure of due diligence in finding the alleged entries in the books before or during trial. Defendant has not demonstrated that the Seago test is satisfied with regard to this evidence.
 
 3.
 
 14
 Defendant also argues that a new trial is necessary on his tax evasion convictions because his tax expert at trial, James Tassoni, has recanted his testimony. Tassoni, a certified public account, was a defense witness. Nevertheless, he testified at trial that he believed defendant did owe an AMT, although an amount lower than the government's calculations. In an affidavit submitted with defendant's motion for a new trial, Tassoni recanted his testimony and stated that he would now testify that (1) defendant had no tax liability for 1985 and (2) defendant had no tax liability for 1986 and, in fact, an overassessment was made. Tassoni's statement essentially serves to corroborate Nusholtz's testimony regarding the proper AMT calculation.
 
 
 15
 An affidavit by a recanting witness, when offered in support of a motion for a new trial, is viewed with extreme suspicion. See United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir.1991).
 
 
 16
 "In considering a motion for new trial based on the contention that an affidavit by a recanting witness constitutes newly discovered evidence the first test to be applied by the judge is whether the court is reasonably well satisfied that the prior testimony was false. Gordon v. United States, 178 F.2d 896, 900 (6th Cir.1949). If that first and primary ground is not satisfied, the primary ground for granting the new trial is lacking."
 
 
 17
 Id. (quoting United States v. Kearney, 682 F.2d 214, 220 (D.C.Cir.1982)). The defendant must then satisfy the four-pronged Seago test.
 
 
 18
 The District Court did not explicitly consider whether it believed the prior testimony was false. The court instead focused on the fact that the recanting witness was not a government witness. The court noted that a defendant rarely would have reason to ask for a new trial based on the false testimony of a defense witness, because one would assume that the witness would testify favorably. Here, defendant's recanting witness is more aptly viewed as offering more favorable evidence than he did at trial. The District Court thus found that defendant had not established the second prong of the Seago test because a defendant fails to exercise due diligence when his own witness does not testify as effectively as he perhaps could have. Furthermore, the court found that the recanted testimony was actually another version of Nusholtz's testimony and thus failed to constitute "new evidence" for the same reasons discussed with regard to that testimony. We find that the District Court did not abuse its discretion in denying defendant's motion for a new trial on these grounds.
 
 4.
 
 19
 Defendant next argues that a new trial is appropriate because of newly discovered evidence that he did in fact file some of his state income tax returns. In order to prove criminal intent, the government introduced evidence pursuant to FED.R.EVID. 404(b)[4] that defendant had failed to file state income tax returns for the years 1985 through 1992. This evidence consisted mainly of a certificate of non-filing from the State of Michigan Department of Treasury. The government's attorneys made a number of references to this evidence during the course of the trial.
 
 
 20
 After trial, the government again contacted the State of Michigan to verify certain information while preparing to respond to one of defendant's motions, and at that point learned that the State had erroneously certified the defendant's failure to file for some of the years. Defendant had in fact filed state income tax returns for 1985, 1986, 1987, and 1988. However, the State stated that it was still unable to locate filed returns for 1984, 1989, 1990, 1991, and 1992. The government thus concedes that defendant did file his state income tax returns for some of the years in question.
 
 
 21
 First, we find that this evidence is not "newly discovered" evidence. Defendant admits that he knew at trial, and in fact testified at trial, that he had filed his state income tax returns. Moreover, the fact that the State erred in its original certification and that defendant, knowing that he had filed his returns, did not pursue the matter with the State, shows a lack of diligence, not a surprise discovery. Finally, defendant has not shown that this evidence would likely produce acquittal. Even with the correction from the State, the evidence still demonstrates that defendant failed to file state income tax returns for 1984 and 1989 through 1992. In addition, the evidence of defendant's failure to file state income tax returns was only a portion of the evidence that the government introduced regarding the other acts by defendant indicating criminal intent. Because defendant has failed to establish three of the Seago factors with regard to this evidence, we conclude that the District Court did not abuse its discretion in denying a new trial on this ground.
 
 5.
 
 22
 Defendant argues next that the District Court should have granted him a new trial on the grounds of newly discovered evidence regarding the calculation of the tax deficiencies for the 1985 and 1987 tax evasion counts. Defendant claims that the government should not have relied on the amount shown as tax due by the defendant on his return, but rather should have prepared a new return that corrected clerical errors and then should have used that amount to determine the deficiency. This new evidence is again based on the testimony of defendant's new expert, Nusholtz, at the sentencing hearing.
 
 
 23
 Regardless of whether the IRS is in fact required to prepare a new tax return, we find that defendant is simply trying to relitigate his case under a new theory. His new expert is reinterpreting evidence presented and available at trial. This alleged IRS requirement could have been presented at trial, and the failure to do so can only be attributed to a lack of due diligence. Having failed to establish the first two Seago requirements with regard to this evidence, we conclude that the District Court did not abuse its discretion in denying a new trial on this basis.
 
 6.
 
 24
 Defendant maintains that the court should grant a new trial because of newly discovered evidence that his trial counsel denied him effective assistance in violation of the Sixth Amendment. There are two parts to defendant's claim. First, defendant asserts that he was denied representation free from conflicts of interest. Second, defendant describes numerous other instances whereby he was denied effective assistance of counsel. We find that neither provides grounds for granting defendant a new trial.
 
 
 25
 We have held that "evidence of ineffective assistance of counsel is not newly discovered evidence for purposes of a motion for new trial where the facts supporting the claim were within the defendant's knowledge at the time of trial." Seago, 930 F.2d at 489. In Seago, 930 F.2d at 489, we agreed with the Seventh Circuit's holding and rationale in United States v. Ellison, 557 F.2d 128 (7th Cir.1977). The defendant in Ellison alleged that counsel had made tactical errors in the course of his trial, such as refusing to challenge allegedly inaccurate statements made at trial. See Ellison, 557 F.2d at 131. The court held that since the underlying facts of defendant's ineffective assistance of counsel claim were known to defendant at the time of trial, they did not constitute "newly discovered evidence" for purposes of FED.R.CRIM.P. 33. See id. at 133.
 
 
 26
 Putting aside for now the conflict of interest claim, we find that Seago 's holding controls the numerous other alleged instances of ineffective counsel. We also note that the record shows that the District Court has already ruled that defendant did not receive ineffective assistance of trial counsel.[5] Nevertheless, defendant argues that all but one of the facts alleged in this appeal were not raised in the earlier motion for a new trial because he was not aware of them at the time. Therefore, he contends that this evidence is "newly discovered." Defendant primarily complains, however, that trial counsel failed to discover "evidence" that we have decided is not "newly discovered" or is more aptly viewed as new interpretations of evidence presented at trial. Tactical errors committed in the course of trial, such as the failure to pursue a particular defense, are facts that were within defendant's knowledge at the time of trial. See Seago, 930 F.2d at 489. The District Court did not abuse its discretion in denying a new trial on this basis.
 
 
 27
 Defendant also asserts that a conflict of interest resulted in ineffective assistance of counsel. He states that after trial, defendant overheard a conversation between his defense counsel and his defense expert, Morris Culver, in which counsel indicated that he had represented IRS Special Agent James Dowling in legal matters with the IRS. Dowling was the IRS case agent in the investigation and prosecution of defendant. Defendant states further that his appellate counsel asked trial counsel about this matter, and that trial counsel confirmed that he had in fact represented Dowling in legal matters before the IRS. Finally, defendant maintains that he was never told of this representation and never gave permission for dual representation.
 
 
 28
 The Supreme Court has established a two-part test for analyzing ineffective assistance claims based on a conflict of interest. See Strickland v. Washington, 466 U.S. 668, 692 (1984) (citing Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980)); Thomas v. Foltz, 818 F.2d 476, 480 (6th Cir.1987). In such circumstances, a defendant must first demonstrate that his attorney had an actual conflict of interest. Thomas, 818 F.2d at 480. In other words, the defendant must show that his attorney "actively represented conflicting interests." Strickland, 466 U.S. at 692. A defendant must next establish that this conflict of interest adversely affected his attorney's performance in representing him. Id. at 692; Thomas, 818 F.2d at 480. Thus, this test directs a reviewing court to presume prejudice if the defendant shows that his counsel's deficient performance was the result of an actual conflict of interest. See Strickland, 466 U.S. at 692; Thomas, 818 F.2d at 480.
 
 
 29
 Although we will accept that this evidence is "newly discovered," we find that defendant has failed to establish that his Sixth Amendment right to the effective assistance of counsel has been violated, because he has not demonstrated that an actual conflict of interest existed at the time of trial. Defendant's trial counsel has submitted an affidavit declaring that he has "never represented Mr. Dowling as an attorney or in any other capacity, nor have I ever been retained by him for legal advice or consultation." Moreover, even if counsel at some point has represented Dowling, defendant has made no effort to demonstrate that this representation adversely affected his attorney's performance in representing him. Thus, defendant has failed to demonstrate that he was denied the effective assistance of counsel on this ground and he is consequently not entitled to a new trial.
 
 7.
 
 30
 Finally, defendant makes a general statement that he is entitled to a new trial because of prosecutorial misconduct. He then refers us to his brief in support of his motion for a new trial to the District Court. The District Court did not address this issue, perhaps because defendant's claims are intertwined with his claims regarding the newly discovered evidence. Essentially, defendant contends that this new evidence proves that the government's attorneys and witnesses lied at trial and at the sentencing hearing. This "evidence" of prosecutorial misconduct is not "new" evidence for the same reasons that most of the evidence discussed above is not new evidence. Moreover, such conclusory allegations of misconduct cannot be the basis for a new trial. Defendant's claims are simply quarrels with the government's theories, and he cannot now relitigate his defense with new arguments.
 
 III.
 
 31
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Defendant was charged with filing a false Individual Income Tax Return, Form 1040, in 1984 through 1988, and was charged with filing a false Corporate Income Tax Return, Form 1120X, in 1988 (First Amendment), 1988 (Second Amendment), and 1989 (Amendment)
 
 
 [2]
 Specifically, Nusholtz testified that a deduction from a limited business partnership called "Hambrose Leasing" was a business deduction that should have been excluded from the AMT calculation. Defendant allegedly had put the deduction on his Form 1040 on the wrong schedule, which had caused it to be included in the AMT calculation. Nusholtz also presented IRS materials which he claimed showed that the deduction should have been excluded from the AMT calculation. If this deduction had been excluded, defendant's tax liability would have been zero
 
 
 [3]
 In 1982, defendant was elected to the Board of Directors of Detroit Central Hospital, and in 1986 he became chairman. During this time, the hospital was renamed New Center Hospital and ownership was transferred to a holding company, Central City Health Services. By 1986, defendant's accounting firm had become the accounting department for the hospital and the holding company. By 1987, defendant's data processing company, Complete Information Services (CIS), of which defendant was the sole proprietor, was performing computerized billing services for the hospital and related entities. Around this time, defendant became chief executive officer of both the Hospital and Central City
 
 
 [4]
 To the extent that defendant's brief can be construed as arguing that this evidence should not have been admitted because of its prejudicial nature, we conclude that defendant cannot raise that issue here in a motion for a new trial brought more than seven days after judgment. See FED.R.CRIM.P. 33
 
 
 [5]
 On February 8, 1995, the District Court entered an order denying defendant's motion for a new trial in which he found no merit to defendant's ineffective assistance of counsel claim