NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  12a0030n.06

No. 09-2297

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Jan 10, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| TOMMY JOE BARROW, | ) | |
| | ) | |
| Petitioner - Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED STATES OF AMERICA, | ) | MICHIGAN |
| | ) | |
| Respondent - Appellee. | ) | |

**Before:  GIBBONS, STRANCH, and ROTH,[*] Circuit Judges.**

**JANE B. STRANCH, Circuit Judge**.  Petitioner Tommy Joe Barrow appeals the district court judgment denying his petition for a writ of error *coram nobis* in which he sought to vacate his 1994 convictions for bank fraud, tax evasion, and filing false tax returns.  For the reasons that follow, we **AFFIRM**.

**I.  BACKGROUND**

Barrow was the founder and controlling shareholder of Barrow, Aldridge & Co. ("BACO"), a Detroit accounting firm.  He was also the sole proprietor of Complete Information Services ("CIS"), a data processing company.

---

[*]The Honorable Jane R. Roth, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

No. 09-2297                          *Barrow v. United States*                          Page 2

In 1982, Barrow was elected to the Board of Directors of Detroit Central Hospital, and in 1986 he became Chairman of the Board.  During Barrow's tenure, the hospital was renamed New Center Hospital ("the hospital"), and ownership was transferred to a holding company, Central City Health Services.  By 1986, BACO acted as the accounting department for the hospital and the holding company, and by 1987, CIS performed computerized billing services for the hospital and related entities.  Barrow eventually accepted the position of CEO of the hospital while he remained the controlling shareholder of BACO.

In September 1989, Internal Revenue Service (IRS) Agent Wesley Bulik began investigating BACO's corporate tax return for the year ending March 31, 1988.  The audit soon expanded to the tax year ending March 31, 1989, and to Barrow's personal federal income tax returns for 1984 through 1988.  Following this investigation, in October 1993, a federal grand jury returned a fifteen-count indictment against Barrow, charging him with making false statements in a bank loan application, 18 U.S.C. § 1014; bank fraud, 18 U.S.C. § 1344; income tax evasion in tax years 1984 through 1988, 26 U.S.C. § 7201; filing false tax returns in tax years 1984 through 1988, 26 U.S.C. § 7206; and filing false amended corporate income tax returns for BACO twice for fiscal year 1988 and once for fiscal year 1989, 26 U.S.C. § 7206.

The Government's theory on the bank fraud charges was that Barrow presented a false application and false supporting personal income tax documents to a bank when Barrow requested a loan.  As to Barrow's personal income tax returns for 1984 through 1988, the Government alleged that Barrow deposited checks the hospital paid to BACO into his personal bank account, but he did not report the income to the IRS or pay personal federal income tax on the funds.  The Government further alleged that, once Barrow realized he was under federal investigation for his failure to report

income and pay income tax between 1984 and 1988, he falsely amended BACO's corporate tax returns for fiscal years 1988 and 1989 to shift the income received from the hospital to the corporation in order to cover up his failure to declare the income on his personal tax returns. The Government also introduced evidence under Federal Rule of Evidence 404(b) for the purpose of showing Barrow's intent. This evidence included Barrow's alleged failure to file Michigan state income tax returns for the years 1984 through 1987 and 1989 through 1992, and Barrow's alleged under-reporting of personal income on the 1993 federal income tax return he filed jointly with his wife.

Barrow's defense was that he made simple errors on the bank loan application and documentation, that funds he received from the hospital payable to BACO were repayments on loans that he personally had made to BACO, and because the funds were traceable to loan repayments, he was not required to claim the funds as personal taxable income. Barrow testified that he did file Michigan state income tax returns during the years in question, and he denied that he under-reported personal taxable income in 1993.

After a ten-day trial, the jury acquitted Barrow of the tax charges for the 1984 and 1986 tax years, but convicted him on all other counts. The district court imposed a sentence of 21 months of imprisonment, which Barrow served. Barrow unsuccessfully challenged his convictions through post-trial motions for mistrial, judgment of acquittal, and for new trial, as well as through direct appeal. This Court affirmed the denial of his motion for new trial based on newly-discovered evidence, *Barrow v. United States*, No. 96-1687, 1997 WL 31427 (6th Cir. Jan. 27, 1997), and also affirmed his convictions on direct appeal. *United States v. Barrow*, 118 F.3d 482 (6th Cir. 1997).

No. 09-2297                    *Barrow v. United States*                    Page 4

The Court later affirmed the denial of Barrow's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. *Barrow v. United States*, 8 F. App'x 286 (6th Cir. 2001).

In 2007, Barrow filed the instant petition for writ of error *coram nobis*, which he amended in early 2008. The district court denied the petition, and this appeal followed.

## II.  ANALYSIS

### A.  Standard of Review

A federal court's power to issue the writ of error *coram nobis* derives from the All Writs Act, 28 U.S.C. § 1651. *United States v. Morgan*, 346 U.S. 502, 506 (1954). The writ of error *coram nobis* may be used to vacate a federal sentence or conviction when a § 2255 motion is unavailable, such as when the petitioner no longer meets the "in custody" requirement of § 2255 after serving a sentence. *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996). The writ may be granted if the petitioner demonstrates: "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known. *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001). *Coram nobis* relief addresses extraordinary "circumstances compelling . . . action to achieve justice." *Morgan*, 346 U.S. at 511. On appeal from the denial of a petition for a writ of error *coram nobis,* this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo. Johnson*, 237 F.3d at 755. In undertaking this review, we are mindful of this Court's three prior *Barrow* decisions and the constraints those decisions necessarily impose upon our analysis.

### B.  Asserted grounds for relief

    *1.  Alleged false testimony of IRS Agent*

No. 09-2297                          *Barrow v. United States*                          Page 5

Barrow contends that he is entitled to a writ of error *coram nobis* because IRS Agent Bulik presented false testimony at the criminal trial, casting doubt on Barrow's convictions. This argument is unavailing for three reasons.

First, Barrow claims that Agent Bulik's false testimony came to light during a 2004 civil trial before the United States Tax Court concerning Barrow's outstanding federal income tax liability. Barrow claims that Agent Bulik admitted during the Tax Court proceeding that he manipulated a mathematical gap in BACO's financial data for 1988 and 1989 to support the Government's criminal case. Although Barrow purported to quote portions of the Tax Court testimony in his *coram nobis* petition, Barrow did not submit to the district court the pertinent portions of the Tax Court and criminal case records that he alleges established the claimed discrepancy in Agent Bulik's testimony. Additionally, Barrow asserted that Agent Bulik's Tax Court testimony related to Exhibit 227-P, but Barrow did not provide a copy of that exhibit to the district court in support of his petition. Because Barrow did not supply the pertinent portions of the Tax Court and criminal records to support his claims, the district court did not have those records before it to review. *See United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005) (noting litigant offered no reasonable explanation for failing to include documents in the record before the district court).

Barrow could not sidestep his error in failing to submit pertinent records to support his *coram nobis* petition by asking the district court to take judicial notice of the Tax Court decision, *Barrow v. Comm'r*, 96 T.C.M. (CCH) 361, 2008 WL 5000112 (2008), and the Supreme Court's opinion in *Boulware v. United States*, 552 U.S. 421 (2008). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the

trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Tax Court opinion did not include any factual findings to support Barrow's claim that Agent Bulik testified falsely during the Tax Court trial. The Tax Court made no reference to Agent Bulik manipulating financial data, and the court collaterally estopped Barrow from denying the commission of fraud in tax years 1985, 1987, and 1988 due to his criminal convictions for those tax years. *Barrow*, 2008 WL 5000112 at *13. The fact that the Tax Court found in Barrow's favor in part on the calculation of certain tax deficiencies, based on application of a civil standard of proof to a different factual record, has no bearing on the adjudicative facts that were before the jury in the criminal case and concerning which the jury applied a higher burden of proof to convict Barrow of multiple offenses. The district court correctly noted that Barrow offered the Tax Court opinion for the truth of the matter asserted–that is, the wrongfulness of his criminal convictions–but because the facts underlying the criminal convictions were in dispute, the Tax Court decision was not an appropriate subject for the taking of judicial notice. Fed. R. Evid. Rule 201(b); *United States v. Collier*, 68 F. App'x 676, 682 (6th Cir. 2003). Therefore, the district court did not abuse its discretion in declining to take judicial notice of the Tax Court opinion. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002).

There was no reason for the district court to take judicial notice of *Boulware* because that published Supreme Court decision was readily available for the district court's review. *See id.* ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case."). But more importantly, *Boulware* simply had no relevance to Barrow's case. As the Tax Court pointed out, "*Boulware* held that a shareholder in a criminal tax evasion case can claim that

No. 09-2297                         *Barrow v. United States*                         Page 7

distributions from his company were a return of capital, without producing evidence that he or the company intended this type of distribution. . . . But the Commissioner is correct in asserting that the theory pursued by the government in Barrow's criminal case didn't involve this issue." *Barrow*, 2008 WL 5000112, at *13. Barrow himself argued before the Tax Court that the Government did not pursue a theory of corporate diversion at his criminal trial and that the Government should be judicially estopped from asserting such a theory in the civil tax case. *Id.* at **12–13. For these reasons, the district court did not abuse its discretion in holding that *Boulware* did not apply to Barrow's case.[1] *See Toth*, 306 F.3d at 349.

The second reason we reject Barrow's argument about Agent Bulik's allegedly false testimony is that the district court correctly determined that the evidence concerning a mathematical gap in the Government's financial analysis, which Barrow now claims Agent Bulik "plugged," was not "new" evidence unknown to Barrow at the time of his criminal trial. *See Johnson*, 237 F.3d at 755. As the district court noted, this issue was previously raised in Barrow's motion for a new trial on the ground of newly discovered evidence. On appeal from denial of that motion, this Court noted that BACO's general ledger and records were admitted into evidence at the criminal trial and Barrow could have pointed out to the trial jury any relevant entries. *Barrow*, 1997 WL 31427, at *3. Additionally, at sentencing, Barrow utilized an expert witness to present evidence of a mathematical difference between certain entries in BACO's ledger. *Id.* This Court concluded that arguments

---

[1]Following oral argument, Barrow's counsel filed a motion asking this Court to take judicial notice of the Tax Court decision and record. That motion is denied. This Court does not consider, for the first time on appeal, documents and transcripts that were not made a part of the record before the district court below. Fed. R. App. P. 10(a); *United States v. O'Dell*, 805 F.2d 637, 643–44 (6th Cir. 1986).

concerning the mathematical gap did not amount to "new evidence" because the defense team could have discovered the same evidence earlier by exercising due diligence prior to and during trial.  *Id.*

Finally, even if Barrow could surmount the obstacles to relief just described, it appears that Agent Bulik's testimony would have related to Barrow's tax convictions for calendar years 1987 and 1988 and not to a number of other offenses of which he was convicted.  Barrow has not shown a factual error of such fundamentally unjust character that it probably would have altered the outcome of the entire proceeding, if the fact had been known.  *See Johnson*, 237 F.3d at 755.

### 2.  Alternative Minimum Tax Calculation

Next, Barrow contends that his conviction for willful filing of a false tax return for calendar year 1985 was undercut by the admission of an IRS Agent during the 2004 Tax Court trial that Barrow did not owe Alternative Minimum Tax (AMT) for tax year 1985, though the Government had alleged at the criminal trial that he owed and failed to pay AMT.  This Court previously determined that Barrow's trial defense team could have computed the correct amount of any AMT owed and challenged the Government's evidence at the criminal trial.  *Barrow*, 1997 WL 31427, at *2.  That determination precludes *coram nobis* relief on this issue.

### 3. 1993 Joint Tax Return

Barrow further contends that the 1993 joint income tax return he filed with his wife was not false and should not have been admitted at his criminal trial as Rule 404(b) evidence of intent.  In support, he asserts that the IRS issued a 4549-CG report in October 1997 in which the IRS made no changes to the 1993 return.

We are unable to explore this argument because Barrow did not include the IRS report in the district court record.  But more importantly, Barrow previously addressed the IRS report in his

No. 09-2297                              *Barrow v. United States*                              Page 9

§ 2255 petition.  "[C]oram nobis relief is not available to litigate issues already litigated; it is reserved for claims which have yet to receive their first disposition."  *Klein v. United States*, 880 F.2d 250, 254 n.1 (10th Cir. 1989); *Willis v. United States*, 654 F.2d 23, 24 (8th Cir. 1981) (per curiam) (in the absence of credible new evidence or a change of law, a *coram nobis* petitioner is not entitled to another review of issues previously raised in a § 2255 motion).  As a result, this issue cannot provide a basis for *coram nobis* relief.

### 4. Michigan State Income Tax Returns

Next, Barrow argues that the district court erred in admitting Rule 404(b) evidence during the criminal trial concerning his failure to file Michigan state income tax returns.  The Government conceded to this Court on appeal from the denial of Barrow's new trial motion that the Government learned after the criminal trial that Barrow had, in fact, filed state income tax returns for some of the years in question.

While this issue is troubling, it does not provide an avenue for relief for several reasons. First, Barrow failed to provide the district court with any documents to substantiate his filing of state tax returns.  Even if he had, relief is foreclosed because this was not an error of fact unknown to Barrow at the criminal trial.  On appeal from the denial of Barrow's new trial motion, this Court ruled that the state tax return evidence was not "newly discovered" because Barrow testified in his own defense at the criminal trial that he had filed his state income tax returns.  *Barrow*, 1997 WL 31427, at *5.  In addition, because Barrow previously raised this argument, the issue cannot provide grounds for *coram nobis* relief.  *Willis*, 654 F.2d at 24; *Klein*, 880 F.2d at 254 n.1.

### 5. Cumulative effect of errors

Finally, Barrow argues that the cumulative effect of error so infected the fairness of his criminal trial as to render the jury's verdict unreliable, violating his due process rights.  Because Barrow has not shown circumstances that qualify as error, we need not consider the cumulative effect of error.

### III.  CONCLUSION

A writ of error *coram nobis* is reserved for extraordinary situations where circumstances are so compelling that court action is required to achieve justice.  Barrow has not made a sufficient showing of compelling circumstances to warrant issuance of the writ.  Accordingly, we **AFFIRM** the judgment of the district court.