

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-4-2008

# In Re: Sterten

Precedential or Non-Precedential: Precedential

Docket No. 07-2237

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Sterten " (2008). *2008 Decisions.* Paper 186.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2237

IN RE: GAYLE L. STERTEN,
                                    Debtor

GAYLE L. STERTEN;
WILLIAM C. MILLER, ESQ., Trustee

v.

OPTION ONE MORTGAGE CORPORATION;
MAIN LINE CAPITAL, INC.;
VILLAGE LAND TRANSFER, INC.

Gayle L. Sterten,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 06-cv-00651)
District Judge: Honorable Timothy J. Savage

Argued September 22, 2008

Before: BARRY, AMBRO, and GARTH, <u>Circuit Judges</u>

(Opinion filed: November 4, 2008 )

David A. Scholl, Esquire (Argued)
Regional Bankruptcy Center of Southeastern PA
6 St. Albans Avenue
Newtown Square, PA   19073-0000

      Counsel for Appellant

Donna M. Doblick, Esquire (Argued)
Reed Smith
435 Sixth Avenue
Pittsburgh, PA   15219-0000

Mark S. Melodia, Esquire
Reed Smith
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, NJ   08540-0000

      Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

2

The Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, imposes disclosure requirements on creditors, exposing them to such penalties as money damages, attorney's fees and recission for failure to disclose finance charges accurately. *See* § 1635(a) & (g); § 1640(a). However, in 1995, in an effort to prevent creditors from being subject to "extraordinary liability" for small disclosure discrepancies, Congress amended the Act to include a "tolerances for accuracy" provision. 141 Cong. Rec. H9514-01 (daily ed. Sept. 27, 1995) (statement of Rep. Leach). Under that provision, a creditor is not liable for undisclosed finance charges if those charges fall within a specified range of error. 15 U.S.C. § 1605(f). We decide whether a Truth in Lending Act defendant who does not specifically defend on the ground that any inaccuracies in its disclosure fell within the tolerance range waives the protection that provision provides. In procedural parlance, we decide whether a tolerances for accuracy defense is affirmative (requiring that it be pled specifically) or general (thus not requiring that it be pled specifically).

We hold that the defense is general, and that a defendant need not specifically raise the Act's tolerances provision in order to avoid liability for disclosure errors that fall within its range. We thus affirm the ruling of the District Court.

## I. Facts and Procedural History

In February 2001, Gaye L. Sterten secured a loan in the amount of $132,000 from Option One Mortgage Corporation.

3

The purpose of the loan was to refinance the second mortgage on her home and to consolidate her medical and credit card bills. Sterten obtained the loan through a mortgage broker, Main Line Capital, working with one of Main Line's owners, Thomas Girone. Girone was also the President of the title insurance agency used in the transaction, Village Land Transfer, Inc. The closing for the loan took place at Sterten's home with only Sterten and Girone present. Girone helped Sterten execute an Adjustable Rate Note in favor of Option One and a mortgage granting Option One a lien on her real property to secure the loan. Sterten signed, among other documents, a HUD-1 Settlement Statement, the mortgage, a Truth in Lending Disclosure Statement, and a mandatory Notice of Right to Cancel.

Nearly two years later, Sterten sent a letter to Option One contending that the closing of the loan had not been done in accordance with the requirements of the Truth in Lending Act and requesting a recission of the loan. On March 18, 2003, after Option One had disputed her right to rescind, Sterten filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Eastern District of Pennsylvania. Option One then filed a proof of claim. In response, Sterten filed an adversary proceeding in her bankruptcy case, seeking recission of the loan along with various statutory penalties.[1] Sterten alleged two specific Truth

---

[1] In addition to naming Option One, Sterten's complaint also named Main Line and Village Land Transfer. The claims against those parties were settled on the day of the trial.

4

in Lending Act violations: (1) that she was never provided with either her Truth in Lending disclosure statement or her Notice of Right to Cancel form; and (2) that the finance charges were not accurately disclosed. Option One denied both allegations, maintaining specifically with respect to its disclosure of the finance charges that it "acted at all times relevant hereto in full compliance with all applicable laws and/or acts." Option One's Answer ¶ 9.

A trial was held, at which both Sterten and Girone testified. The Bankruptcy Court found Girone more credible than Sterten on whether she had received the required forms and ruled in Option One's favor on that claim. With respect to the adequacy of Option One's disclosure, the parties agreed that ten specific fees and charges listed on the HUD-1 Settlement Statement, totaling roughly $2,000, had not been included as part of the "Finance Charge" disclosed in the Truth in Lending Disclosure Statement. The Court examined each fee and concluded that only two of them—a $25 "mark up" in the appraisal fee and $32 charged for notary services—qualified as "finance charges" under the Truth in Lending Act.[2] The Court then *sua sponte* applied the Act's tolerances for accuracy

---

[2] Under the Act's implementing regulation, Regulation Z, many "[r]eal-estate related fees" are excluded from the finance charge if they are "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7). The Bankruptcy Court concluded that all but the "mark up" of the appraisal fees and the notary charges fit with the exceptions set out in § 226.4(c)(7).

5

provision, 15 U.S.C. § 1605(f), concluding that, because the $57 in nondisclosed finance charges were within the tolerance range, the disclosure was "accurate as a matter of law." It thus entered judgment in favor of Option One on both the recission and the damages claims.

Sterten then filed a Motion to Alter or Amend the Bankruptcy Court's order. She argued that the Court should not have applied the Act's tolerances for accuracy provision because Option One had failed to raise it as an affirmative defense and had therefore waived it.[3] On January 4, 2006, the Bankruptcy Court granted Sterten's motion, concluding that § 1605(f) is an affirmative defense and that, because "Option One failed to raise § 1605(f) in its pleadings, at trial, or at any other point in th[e] proceeding," it waived the defense. *Sterten v. Option One Mortgage Corp.* (*In re Sterten*), Bankr. No. 03-14014, 2006 Bankr. LEXIS 4130, at *10–11 (Bankr. E.D. Pa. Jan. 4, 2006). The Court declared recission and awarded Sterten $2,000 in statutory damages along with reasonable attorney's fees. *Id.* at *11.

---

[3] Sterten's motion raised two additional claims that are not at issue in this appeal. She challenged (1) the Court's factual conclusion that the required forms were delivered to her at closing, and (2) its determination that the Truth in Lending Act did not require the fees beyond the $57 in appraisal overcharge and notary fee to be included in the Disclosure Statement.

6

Option One then appealed to the District Court.[4]  On March 22, 2007, the District Court reversed the Bankruptcy Court's amended judgment, holding that "[b]ecause the 'tolerances for accuracy' provision is not an affirmative defense, the Bankruptcy Court's original verdict in favor of Option One was correct and should not have been disturbed." *Sterten v. Option One Mortgage Corp.* (*In re Sterten*), 479 F. Supp. 2d 479, 485 (E.D. Pa. 2007).  It therefore ordered the Bankruptcy Court's initial judgment restored.  *Id.*  Sterten timely appealed.

## II.  Jurisdiction and Standard of Review

The Bankruptcy Court had jurisdiction over Sterten's adversary proceeding under 28 U.S.C. § 157.  The District Court had jurisdiction over the appeal of the Bankruptcy Court's order under 28 U.S.C. § 158(a).  We have jurisdiction over the District Court's reversal of the Bankruptcy Court under 28 U.S.C. § 158(d).

In reviewing an appeal to a District Court of a bankruptcy decision, "we stand in the shoes of the District Court and review the Bankruptcy Court's decision."  *IRS v. Pransky* (*In re*

---

[4] While Option One's appeal was pending, the Bankruptcy Court held a remedy hearing.  *Sterten v. Option One Mortgage Corp.* (*In re Sterten*), 352 B.R. 380 (Bankr. E.D. Pa. 2006).  The Court concluded that Sterten had a repayment obligation of $118,819.16, payable in 302 monthly installments, and awarded her $19,500 in attorney's fees.  *Id.* at 390.

7

*Pransky*), 318 F.3d 536, 542 (3d Cir. 2003) (citation and internal quotation marks omitted). Accordingly, "[w]e review [the Bankruptcy Court's] findings of fact for clear error and its legal conclusions *de novo*." *Id.* Determining whether the Truth in Lending Act's tolerances for accuracy provision is an affirmative defense is a question of law. *See Wolf v. Reliance Standard Life Ins.*, 71 F.3d 444, 446 (1st Cir. 1995) (explaining that whether a defense is "a waivable affirmative defense is a pure question of law"). Thus, we review the Bankruptcy Court's determination on that issue *de novo*. We review a court's decision not to treat a defense as waived for abuse of discretion. *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 506 (3d Cir. 2006).

### III. Analysis

The Truth in Lending Act's tolerances provision reads in pertinent part as follows:

(f) Tolerances for accuracy

In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge—

(1) shall be treated as being accurate for purposes of [a claim

8

for damages] if the amount disclosed as the finance charge—

> (A) does not vary from the actual finance charge by more than $100; [and]

> . . . .

> (2) shall be treated as being accurate for purposes of [a claim for recission] if—

> > (A) . . . the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended . . . .

15 U.S.C. § 1605(f).

Neither party disputes that the $57 in undisclosed finance

9

charges falls within the tolerance range for both Sterten's damages claim and her claim for recission.[5]  What Sterten disputes is whether Option One was in a position to take advantage of the protection § 1605(f) provides.  Sterten makes two specific arguments on that point.  First, she argues that the Truth in Lending Act's tolerances for accuracy provision sets out an affirmative defense that Option One waived by not pleading it in the initial stages of the litigation.[6]  Second, she argues that, even if Option One was not required to raise the tolerances provision as an affirmative defense, its failure to raise the defense in any fashion at any point in the litigation amounted to a waiver.

---

[5] Because the total loan amount was $132,000, the tolerance range for Sterten's recission claim is $660.  15 U.S.C. § 1605(f)(2)(A).

[6] Option One contends that it *did* raise the tolerances provision as an affirmative defense in its answer.  *See* Option One's Br. 20.  Its argument to that effect is, however, unconvincing.  Its answer included a section labeled "Affirmative Defenses," which asserted, among other defenses, that "Option One Mortgage Corporation acted at all times relevant hereto in full compliance with all applicable laws and acts."  Option One's Answer, Affirmative Defenses ¶ 3.  But simply contending that, as a general matter, the applicable laws were complied with is not enough to plead a true affirmative defense adequately.

10

## A.    Is the Tolerances for Accuracy Provision an Affirmative Defense?

Federal Rule of Civil Procedure 8(b)[7] allows a party to contest the particulars of a complaint simply by issuing a general denial in a responsive pleading. *See* 5 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1265 (3d ed. 2004), at 546–47 ("Wright & Miller") ("No prescribed set of words need be employed in framing the general denial; any statement making it clear that the defendant intends to put in issue all of the averments in the opposing party's pleading is sufficient."). That is what Option One did when it asserted in its answer that, with respect to its disclosures, it "acted at all times relevant hereto in full compliance with all applicable laws and/or acts." Rule 8(c) governs affirmative defenses, which are generally waived if not specifically raised "by responsive pleading or by appropriate motion." *Elliot & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 321 (3d Cir. 2006). At the time of these proceedings, Rule 8(c) stated in pertinent part that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively [several listed defenses] *and any other matter constituting an avoidance or affirmative defense*."[8]

---

[7] Federal Rule of Civil Procedure 8 was applicable to Sterten's bankruptcy proceedings under Bankruptcy Rule 7008.

[8] Following an amendment that became effective December 1, 2007, the Rule now states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative

11

Fed. R. Civ. P. 8(c) (emphasis added). The question we face is whether the Truth in Lending Act's tolerance for error is invoked by a Rule 8(b) general denial, or whether it falls within Rule 8(c)'s catch-all "any other matter" provision and therefore requires affirmative pleading.

Rule 8(c) itself provides little guidance for determining which defenses, other than those specifically set out, fall within its ambit. Our Court has yet to endorse any particular approach to making that determination.[9]

---

defense, including: [19 listed defenses]." Fed. R. Civ. P. 8(c)(1). The amendment was not intended to alter the rule substantively. *See* 5 Wright & Miller § 1270 (Supp. 2008), at 110 (explaining that the "changes were not intended to have a substantive effect").

[9] We addressed the defining features of an affirmative defense in *National Union Fire Insurance Co. v. City Savings, F.S.B. of Pittsburgh, Pa.*, 28 F.3d 376 (3d Cir. 1994). We cited Black's Law Dictionary's definition of an "affirmative defense" as "[a] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. *A response to a plaintiff's* claim which attacks the plaintiff's [legal] right to bring an action, as opposed to attacking the truth of [the] claim." *Id.* at 393 (citing Black's Law Dictionary 60 (6th ed. 1990)) (emphasis in original) (first alteration in original). However, the issue in *National Union* was not, as it is here, whether a particular defense is deemed affirmative. Rather, it was whether an affirmative defense counts as a "claim" or "action" for

Many courts in addressing this issue have focused on the relationship between the defense in question and the plaintiff's primary case. Thus, for instance, the Court of Appeals for the Fifth Circuit has stated that "pertinent to the analysis [of whether a defense is an affirmative defense] is the logical relationship between the defense and the cause of action asserted by the plaintiff." *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). The *Ingraham* Court also explained that this "inquiry requires [among other things] a determination . . . whether the matter at issue fairly may be said to constitute a necessary or extrinsic element in the plaintiff's cause of action." *Id.* The Court of Appeals for the First Circuit has held that the "test for whether a given defense falls within the Rule 8(c) 'residuary' clause is whether the defense shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to." *Wolf*, 71 F.3d at 449 (citation and internal quotation marks omitted).

As a theoretical matter, this focus on whether a defense raises factual or legal issues other than those put in play by the plaintiff's cause of action nicely tracks the distinction between a general denial and an affirmative defense. When we are

purposes of the application of a particular jurisdictional bar. *See id.* at 392–95 (addressing whether the jurisdictional bar of the Financial Institution Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(13)(D), applies to affirmative defenses). *National Union* thus does not dictate the course of our inquiry here.

13

asking whether a particular defense is an affirmative defense, what we are really asking is whether that defense is adequately asserted merely by denying the allegations made in the complaint, or whether more is required. To answer that question, we need to determine whether the defense notes issues not raised, even by implication, in the complaint.

In practice, however, focusing solely on the relationship between the defense and the plaintiff's cause of action is of limited use where, as here, what is at issue is precisely the nature of that relationship. *See* 5 Wright & Miller § 1271 (3d ed. 2004), at 601 (noting that "this mode of analysis has a certain tautological quality to it because all it suggests is that matters that are not part of the plaintiff's substantive case are to be pleaded affirmatively—but, in a sense, determining what matters are part of the plaintiff's case is the very thing to be ascertained by deciding whether a certain issue is or is not an affirmative defense"). Option One's argument is that the tolerances provision defines what counts, for legal purposes, as an accurate Truth in Lending Act disclosure, and thus Sterten invoked the provision when she alleged that Option One's disclosures were inaccurate. *See* Option One's Br. 13 ("[T]he debtor's claim fails once the court applies the very statutory scheme that creates the claim in the first place, *not* because the lender has introduced any extrinsic facts or countervailing principles of law.") (emphasis in original). Sterten's argument, on the other hand, is that the tolerances provision sets out a statutory exception to liability that a defendant must demonstrate applies to the undisclosed finance charges. *See*

14

Sterten's Reply Br. 2 ("[I]t is not true . . . that a borrower cannot prevail if the finance charge under-disclosure is less than one-half of one percent of the finance charge. The lender is obliged to show 'something more,' i.e., that the tolerance applies to the charges at issue.").

It is helpful to look instead at what Rule 8(c) is intended to avoid. As we have explained in a different context, "[t]he purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002); *see also Ingraham*, 808 F.2d at 1079 ("Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise. A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."). As a practical matter, that is the proper focus of our inquiry—whether, given what Sterten was already required to show, Option One's failure to raise the tolerance issue specifically deprived her of an opportunity to rebut that defense or to alter her litigation strategy accordingly.

We see no reason to think that Sterten suffered any "unfair surprise" as a consequence of Option One's failure to plead specifically the tolerances for accuracy defense. The analysis a plaintiff must undertake to show *any* undisclosed finance charges under the Truth in Lending Act—that there were discrepancies between what was charged and what was

15

disclosed in the Truth in Lending Disclosure Statement, and that those undisclosed fees fall within the Act's definition of a "finance charge"—is the same analysis required to show that the undisclosed charges exceeded § 1605(f)'s range of error. As the District Court aptly noted, "In her complaint, Sterten alleged all disclosure violations she believed were attributable to Option One . . . . Sterten does not, and cannot, argue that had she been aware earlier that § 1605(f) was implicated, she would have alleged more substantial violations . . . ." *Sterten*, 479 F. Supp. 2d at 483. Thus it is hard to see how Option One's failure to invoke the tolerances provision disadvantaged Sterten in any way.

Sterten nonetheless contends that there was unfair surprise in her case, arguing that "the 'tolerance' defense is not a mechanical process which would be applied and churn out a result in exactly the same manner whether it were raised by a party defendant prior to trial or not raised until after trial." Sterten's Br. 18. She makes two specific arguments in support of this claim, neither of which persuades us.

First, Sterten notes that, while the tolerance range when a creditor seeks recission is normally one-half of one percent of the total amount of credit extended, 15 U.S.C. § 1605(f)(2)(A), it shrinks to $35 when foreclosure proceedings have been filed, § 1635(i)(2). Therefore, she contends, the application of the tolerance defense depends on facts outside the debtor's primary case—namely, whether foreclosure has begun. Sterten's Br. 19. While this claim is undeniably true, it is hard to see how it

16

presents an unfair surprise problem. Whether foreclosure proceedings have, in fact, begun is something a Truth in Lending Act plaintiff is in a position to know. There is thus no reason why a plaintiff under the Act would be surprised or burdened by the application of one range of tolerance rather than another. That the amount of error tolerated varies if foreclosure proceedings have begun is not, then, enough to place the pleading burden on the defendant. *See Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980) (explaining that placing the pleading burden on the defendant is appropriate where a defense hinges on "facts peculiarly within the knowledge and control of the defendant").

Second, Sterten argues that, had she "known that 'tolerance' of the finance charges was at issue, she may have well undertaken to prove or argue that these charges *were* institutional rather than attributable to mere mathematical error." Sterten's Br. 20 (emphasis in original). But there is nothing to suggest that applying the tolerances provision turns on the motives of the creditor. The sole support Sterten provides for that proposition is one reference in case law to a statement by then-Senator Paul Sarbanes offered in support of adding the tolerances provision to the Act. *Id.* (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 622 (6th Cir. 2002)). *Inge* quotes Senator Sarbenes as saying that "[t]his increased tolerance for errors is intended to protect lenders from . . . small errors of judgment . . . . It is obviously not intended to give lenders the right to pad fees up to the tolerance limit . . . ." 281 F.3d at 622 (quoting 141 Cong. Rec. S 14567 (daily ed. Sept. 28, 1995) (statement of

17

Senator Sarbanes)). But there is nothing in the actual text of § 1605(f) to indicate that courts have authority to condition application of the provision on the reason for a particular disclosure error. On the contrary, the provision clearly states that "the disclosure of the finance charge . . . *shall* be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge—[falls within the specified tolerances]." 15 U.S.C. § 1605(f) (emphasis added). Thus, as Option One's motives do not appear relevant to the analysis, Sterten was not prejudiced by losing the opportunity to bring those motives into question.

Given, then, what is needed to establish a Truth in Lending Act disclosure violation, we cannot say that the failure to plead the tolerance issue specifically threatens a Truth in Lending Act plaintiff with unfair surprise. We therefore conclude that § 1605(f) is not an affirmative defense.

Sterten argues that this conclusion is inconsistent with *Inge*, which is the case the Bankruptcy Court primarily relied on in concluding that § 1605(f) does amount to an affirmative defense. *See Sterten*, 2006 Bankr. LEXIS 4130, at *6–10. But *Inge* dealt with a separate matter. It concerned whether a *plaintiff* must allege in his or her complaint that "the difference between Defendant's initially disclosed finance charge and the actual finance charge exceeded" the tolerance range or else be subject to dismissal for failure to state a claim. *Inge*, 281 F.3d at 616. The *Inge* Court sided with the plaintiff, holding that the Truth in Lending Act does not require that a complaint

18

specifically contend that the claimed disclosure errors exceeded the § 1605(f) threshold in order to state a recognized claim. *Id.* at 621. We do not dispute that conclusion here. We only stress that there is nothing inconsistent about holding, as the *Inge* Court did, that § 1605(f) "does not impose an independent pleading hurdle for [Truth in Lending Act] plaintiffs," *id.*, and concluding, as we do here, that § 1605(f) is not an affirmative defense that must be pled specifically by a defendant. Under notice pleading standards, it is sufficient for a plaintiff to plead an error in the disclosed finance charges to bring the statutory definition of error into play. *See Bell Atl. Corp. v. Twombly*, __ U.S. __,127 S. Ct. 1955, 1964 (2007) (describing the notice pleading standard). For that same reason, it is sufficient for a defendant to deny that it made any disclosure errors in order to invoke § 1605(f) as well.

It is true that the *Inge* Court went on to suggest that "Congress' remedial purpose for [the Truth in Lending Act] is best effectuated by construing the § 1605(f) tolerances provision as a potential affirmative defense, rather than as an essential element of a finance charge disclosure claim." 281 F.3d at 621. But that *dictum* is not required by *Inge*'s holding, and, for the reasons set forth above, we choose not to adopt that suggestion here.

In sum, because the Truth in Lending Act's tolerances for accuracy defense is not affirmative, but can be put in play by a general denial, Option One did not forfeit the chance to benefit from the provision by failing to raise the tolerance issue

19

specifically in answer to Sterten's complaint.

## B.    Did Option One Waive the Protection of § 1605(f) by not Raising It at Any Point in the Litigation?

Sterten argues that even if Option One were not required to raise the tolerance issue at the pleading stage, its "complete failure . . . to raise the issue of the 'tolerance' defense in any way, shape, or form to the [Bankruptcy Court] must generally be viewed as a waiver of that defense." Sterten's Br. 21. More specifically, Sterten maintains that the Bankruptcy Court's "raising of the 'tolerance' defense issue sua sponte deprived [Sterten] of the ability to argue that the 'tolerance' should not apply due to the presence of foreclosure proceedings or because the specific overcharges were . . . not the subject of an innocent miscalculation." *Id.* at 22–23.

This argument fails for the same reason the previous argument did—Sterten cannot establish that she suffered any prejudice as a result of Option One's failure to raise the issue. *Cf. Cetel*, 460 F.3d at 506 (holding that, even in the case of an affirmative defense, there is no waiver if there is "no prejudice"). First, in her Motion to Alter or Amend the Bankruptcy Court's initial order, Sterten conceded that foreclosure proceedings had not been filed in her case, noting instead that "*if* at any time [Option One] *attempts to commence* a foreclosure action against the Debtor, the 'tolerance' will be reduced to $35." Sterten's Mot. to Alter or Amend Court's Order ¶ 7 (emphasis added). Clearly, Sterten could not have

20

been prejudiced by being deprived of an opportunity to present an argument—that her case falls under the lower tolerance range that applies after foreclosure proceedings begin—that the facts made unavailable to her. Second, as discussed above, the Truth in Lending Act's various scenarios for tolerating minor inaccuracies do not hinge on the reasons behind the disclosure errors. Yet again, Sterten suffered no prejudice by being denied the opportunity to make an argument not relevant to whether she prevails.

We do not dispute that the most prudent course for Option One was to argue—in its answer or otherwise—that, if it made any disclosure errors, those errors fell within the tolerance range rather than relying on the Bankruptcy Court's *sua sponte* application of § 1605(f). Still, Option One's general denial that it committed any disclosure violations was sufficient to preserve the tolerance issue. Given that denial, and given the absence of any real prejudice suffered by Sterten, the Bankruptcy Court's *sua sponte* application of § 1605(f) was not improper.

## IV. Conclusion

Option One did not forfeit the defense afforded by the Truth in Lending Act's tolerances for accuracy provision by failing to raise it specifically before the Bankruptcy Court. The defense was general. That it was directly raised *sua sponte* by the Bankruptcy Court is thus permitted. That Court's initial judgment was therefore correct—Option One's disclosures were

21

"accurate as a matter of law" because the amount of undisclosed finance charges was within the statutory margin of error. Accordingly, we affirm the District Court's order directing the Bankruptcy Court to restore its initial judgment in favor of Option One.